[Civ. No. 2761. First Appellate District, Division Two.—May 20, 1919.]

## HENRY W. TAYLOR, Appellant, v. M. V. BALLARD et al., Respondents.

[1] EASEMENTS—RIGHT OF WAY "OF NECESSITY"—SUPERFLUOUS WORDS —REVERSIBLE ERROR.—In an action to quiet title to a tract of land over which the defendants claim a right of way, error in decreeing that the defendants are the owners and in possession of a right of way "of necessity," although no such claim was set up in the pleadings, is not a ground for reversal of the judgment where the facts found establish the defendants' right to use the right of way.

[2] JUDGMENTS—TECHNICAL ERROR—REVERSAL.—A judgment will not be reversed for a matter of form nor upon a rigid interpretation of an immaterial statement of fact, even though technical error appears.

[3] EASEMENTS—CONTRACTUAL RIGHT OF WAY—USE OF CUT-OFF.—
Where there is a definite agreement for a particular right of way,
it is immaterial that the persons claiming such easement at times
in good weather make use of an equally well-defined road, de-
scribed as a little cut-off, which branches from the contractual
right of way at one end, rejoining it at the other end.

[4] ID.—RIGHT OF WAY FOR LIMITED PERIOD.—A right of way ex-
pressly granted for a limited period or upon a contingency or
condition is just as firmly vested for the time being as would be
a leasehold.

[5] ID.—PURCHASE OF LANDS—KNOWLEDGE OR NOTICE OF RIGHT OF
WAY — STATUS OF TITLE — SUBSEQUENT SALE. — Where land is
bought without knowledge of an unrecorded contract giving a
right of way over it, and also without knowledge, actual or im-
puted, of facts sufficient to put a prudent buyer upon inquiry,
the purchaser takes title free from the use, and has the right to
convey equally good title to her purchaser, even though the latter
has full knowledge of the facts.

[6] ID.—USE OF LAND BY ANOTHER—DUTY OF VENDEE TO MAKE IN-
QUIRY.—A purchaser may not, by failing to acquaint herself with
the open and clearly discernible possession and use of the land
by another than her prospective vendor, avoid making inquiry on
the subject, and thereby evade the rule in regard to notice as well
as its consequences.

[7] ID.—IMPRACTICABILITY OF VISITING LAND—IMMATERIAL FACT.—It
is immaterial that such purchaser lives at some distant point and
that it is impractical for her to visit and examine the land. Under
such circumstances she might readily have had another make the
examination for her.

APPEAL from a judgment of the Superior Court of
Alameda County. William H. Waste, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles F. Hanlon for Appellant.

J. Early Craig for Respondents.

BRITTAIN, J.—The plaintiff, Henry W. Taylor, appeals
from a judgment quieting his title to twenty-four and one-
half acres of land in the Claremont district of Berkeley,

6. Physical conditions which will charge purchaser of servient estate
with notice of easement, note, 8 L. R. A. (N. S.) 418.

Possession of easement as notice of title, note, 13 L. R. A. (N. S.)
132.

subject to a right of way across it, adjudged to belong to the respondents, E. D. Walden and Virginia E. Walden.

The parties claim from a common source of title. E. E. Hewlett and Ione Fore Hewlett, his wife, the common grantors, acquired title to twenty-seven acres of land, bounded on the north and east sides by a deep canyon with precipitous sides. Between the land and the nearest public roads on those sides intervened the lands of other owners. The land abutted on the south upon the Alvarado road. In 1912 the Hewletts sold to the Waldens two and one-half acres in the northeast corner of the twenty-seven acre tract, where the respondents established their home. The only means of access to it was from the Alvarado road over the remaining twenty-four and one-half acres. Coincident with the conveyance to the Waldens, the grantors and the grantees named in the deed executed an instrument in which they were respectively designated as "first party" and "second party." Its effective words were that "the first party hereby agrees to allow second party, his heirs and assigns, to use a temporary right of way over and across the lands of the first party," that is, the lands in suit, "said temporary right of way being described as follows [here follows a description by courses and distances from a point on the southern boundary of the tract, to the intersection of the right of way line] with the western side line of that parcel of land conveyed by party of the first —— to party of the second part by deed of even date herewith. The second party hereby agrees to surrender and relinquish all claim to said temporary right of way immediately upon receipt of written note from first party that said first party has selected and established a permanent right of way over and across his said lands." It was the right of way so established that was decreed to belong to the respondents.

The broad ground of appellant's attack on the decree rests on the fact that before this right of way agreement was recorded the Hewletts conveyed the twenty-four and one-half acres to Mrs. Mary A. Huntington without her having actual notice of the contract or knowledge of the existence of the road, and, it is argued, she therefore took title free from the easement, and conveyed equally good title to her grantee, Taylor, the appellant, even though he

knew of the existence of the agreement at the time he received conveyance from Mrs. Huntington.

At the close of an able and exhaustive brief counsel for the appellant has well summarized his grounds of attack in five propositions, upon which reversal is asked. From a careful examination of the record, and a consideration of the printed and oral arguments of counsel and the authorities relied upon by them, the conclusion has been reached that the judgment must be affirmed. For convenience in stating the grounds of the decision, the appellant's five propositions are discussed in an order differing from that of their presentation.

[1] The appellant's fifth proposition is that the court erred in giving judgment for a right of way of necessity when no such claim was set up in the pleadings. The attack is made upon the fourth paragraph of the decree, in which it is stated the respondents are the owners and in possession of a right of way of necessity, which is described as it was described in the agreement, and, that until the selection and establishment by the plaintiff or his successors, as the grantee by mesne conveyances from the Hewletts, of a permanent right of way, the respondents and their successors are entitled to the use of the right of way described. The decree established the respondents' right to use the easement. The facts on which this right depended are to be found either expressly stated or necessarily implied in the findings. If the right to the use exists, the words "of necessity" are superfluous. They neither add to nor detract from the force of the judgment, and are not to be construed in any narrow or technical sense to defeat it. The findings show that the only means of access to the Walden land is a road over the appellant's land, and that as a part of the consideration of the purchase by the respondents the Hewletts, after causing the particular road to be surveyed, executed the agreement by which the right of way was established. Broadly speaking, it is necessary to the use of the Walden land, and in that sense, no doubt, the phrase was used. It was descriptive merely, and the only possible result of a reversal of the judgment on this ground would be to permit a pen to be drawn through the superfluous words. [2] A judgment will not be reversed for a matter of form nor upon a rigid interpretation of an

immaterial statement of fact, even though technical error appears. (Const., art. VI, sec. 4½; Code Civ. Proc., 475; Civ. Code, 3533, 3534, 3537; *Webster* v. *King*, 33 Cal. 348; *Stoddart* v. *Burge*, 53 Cal. 395; *San Francisco etc. Ry. Co.* v. *Leviston*, 134 Cal. 415, [66 Pac. 473].)

[3] In the appellant's fourth proposition he attacks what is claimed to be the temporary and uncertain character of the right of way, but the argument is based upon the assumption that the right of way was one resting upon implication upon the severance of the Walden land from the main body. If such were the case, the facts on which appellant relies might have controlling force, but as against the definite agreement for a particular right of way, it is immaterial that the respondents in good weather at times made use of an equally well-defined road, described as a little cut-off, a straight up and down road, which branched from the contractual right of way near one end, rejoining it near the other end, and was wholly on the twenty-four and one-half acres. Neither is it material that there were cattle trails upon the appellant's land. The respondents' right rested on the express contract and not upon either an implication of a technical way of necessity or adverse user. It is argued that an easement must be permanent and not a mere temporary license. The cases cited to support this argument had to do with different conditions. They do not, nor could they, change the ordinary rules of law relating to contracts. [4] There is no magic in the use of the word "easement," and a right of way expressly granted for a limited period or upon a contingency or condition is just as firmly vested for the time being as would be a leasehold. It is suggested that as the Hewletts have parted with title to the twenty-four and one-half acres, the contingency provided in the contract can never arise. If this were so, under the very terms of the contract the right of way would be permanent and the appellant's contention in that regard would fail. The judgment, however, expressly determines that the appellant and his successors are vested with the same power reserved by the Hewletts to designate another and permanent right of way.

Counsel for the appellant designates his second proposition as a corollary of the first, and because of their close relationship they are considered together. The rule of law

asserted on behalf of the appellant is well established.  [5]
If Mrs. Huntington bought from Hewlett without knowl-
edge of the unrecorded contract, and also without knowl-
edge, actual or imputed to her, of facts sufficient to put a
prudent buyer upon inquiry, she took title free from the
use, and had the right to convey equally good title to her
purchaser, even though he was fully informed of the re-
spondents' claims.  (Pomeroy's Equity Jurisprudence, 3d
ed., 754.)   Under the facts of this case it does not ap-
pear that Mrs. Huntington was in a position to rely upon
the nonrecordation of the contract because the condition of
the land was such as to require her as a prudent purchaser
to inform herself regarding the possessory use of the well-
defined road.   The rule applicable to the facts disclosed by
the evidence and incorporated in the findings was that an-
nounced and clearly illustrated in a recent opinion written
by Mr. Justice Olney, and which met the unanimous con-
currence of the members of the supreme court: "Actual
occupancy of the land, *possessio pedis*, has always been
held, in the absence of qualifying circumstances, to be pos-
session of a character to constitute or establish notice."
(*Randall* v. *Allen*, 180 Cal. 298, [180 Pac. 941].)

Upon this branch of the case the facts are that about a
year after the contract for the right of way was executed,
Hewlett, then being indebted to Mrs. Huntington to the
amount of two hundred and fifty thousand dollars or there-
abouts, joined by his wife, conveyed to his creditor the
twenty-four and one-half acres, on an agreed valuation of
twenty-one thousand five hundred dollars to be set off
against his debt.   This transaction took place in Los An-
geles.   Neither Mrs. Huntington nor her son, who was
representing her, caused any examination to be made, either
of the title or of the land.   At that time the road along the
contractual right of way had been graded with plow and
scraper to a width of ten feet, after the brush had been cut
out.   As found by the court, it follows the meanders of the
hills and cuts deeply into the hillsides and into the surface
of the land, and at places runs over substantial fills.   It
was in daily use by the Waldens and persons visiting their
premises, as a road for vehicles, pedestrians, and livestock.
This road, with the similarly constructed and visible cut-off
entirely on the twenty-four and one-half acres, by reason of

the configuration of the land furnished the only means of access to the Walden house. The road and the house are clearly apparent from a photograph introduced in evidence on behalf of the plaintiff. The appearance of the road showed its purpose was to permit access to Waldens' home; its condition and constant use were facts which no buyer could safely refuse or neglect to observe. **[6]** A purchaser may not by failing to acquaint herself with the open and clearly discernible possession and use of the land by another than her prospective vendor avoid making inquiry on the subject, and thereby evade the rule in regard to notice as well as its consequences. (*Scheerer* v. *Cuddy*, 85 Cal. 273, [24 Pac. 713].) The buyer, in this instance, Mrs. Huntington, was bound to know who was in possession of the property and is chargeable with notice of the occupants' title. (*Beattie* v. *Crewdson*, 124 Cal. 579, [57 Pac. 463].)

**[7]** It is argued that this rule does not apply to the present case, because both Mrs. Huntington and her son, Mr. H. E. Huntington, were in Los Angeles, and, therefore, it was impracticable for them to visit and examine the land. The buyer might readily have had another make the examination for her.

After submission the case was reopened to enable counsel for the appellant to make a tender of additional evidence to the effect that neither Mrs. Huntington nor her son had ever seen the property, that it was impracticable for them to have seen it by reason of their residence in southern California, and that they had no actual notice of the existence of the road or the physical conformation of the land. Under the rule applicable to such cases, this amounted to an excuse for not observing the rule requiring a prudent buyer to inform himself concerning the rights of third persons openly using the land. Such evidence was immaterial. There was no error in rejecting it.

It was stipulated Mrs. Huntington received the deed from the Hewletts "and the title of the property in good faith and for value." There was no imputation of bad faith on the part of Mrs. Huntington. The whole record shows the only substantial question was whether or not the physical conditions were such as to bring her within the rule of *Randall* v. *Allen* and *Beattie* v. *Crewdson*. The findings

leave no doubt upon that subject, and they are supported by the evidence.

Upon conflicting evidence the court found that before the appellant contracted to purchase from Mrs. Huntington, he had actual knowledge of the existence of the road, the Waldens' use of it, and the fact that the only means of ingress to and egress from the Walden lands was over the lands the appellant subsequently purchased. His contract to purchase was recorded prior to the recordation of the Walden contract, and the deed to the appellant was executed two and a half months after the recordation of the Walden contract. The rights acquired by him under his contract of purchase were in no respect superior to those acquired by Mrs. Huntington. He was charged, as she was, with notice by the physical conditions and the Waldens' use of the right of way. His title is subject to the right of way, not by reason of his own actual knowledge, but by reason of Mrs. Huntington's failure to obtain information regarding facts of which he knew, and of which she ought to have known.

The appellant's third proposition is in regard to the burden of proving notice to or knowledge of Mrs. Huntington. Even if it be assumed the burden was upon Walden, he undertook and carried the burden by proof of the physical conditions, the existence and constant use of the road. It is unnecessary to enter upon a lengthy discussion upon minor points presented by counsel in the argument in support of his five essential propositions. None of them warrants interference with the action of the trial court.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on July 17, 1919.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.