[Civ. No. 38655. First Dist., Div. Four. Sept. 15, 1977.]

BENNY KRAUS et al., Plaintiffs and Appellants, v.
WILLOW PARK PUBLIC GOLF COURSE et al.,
Defendants and Respondents;
EDWARD R. FITZSIMMONS, Defendant and Appellant.

**COUNSEL**

Hagler, Knudsen & Kaufman and Philip H. Knudsen for Plaintiffs and Appellants.

Simonian & Pretzer and Arthur L. Pretzer for Defendants and Respondents.

Edward R. FitzSimmons and Kenneth James Fishback, Jr., for Defendant and Appellant.

**OPINION**

**CHRISTIAN, J.**—On June 22, 1967, Benny Kraus[1] and other investors in Dorado-Pacific Investment Corporation's Willow Park Public Golf Course project filed a complaint in the superior court against Willow Park Golf Course, a corporation, Richard F. Davis, Leroy Spaggiari, Rene Viviani, Edward R. Fitzsimmons (ind. and dba Willow Park Public Golf Course, a limited partnership), Palmer Crow, Ray G. Montalvo, Bob Baldock, Dorado-Pacific Investment Corp., and Bob Baldock, Inc. The complaint contained allegations of breach of contract, fraud, negligent misrepresentation, conversion, violation of the California Corporate Securities Law, breach of a third-party beneficiary contract, and fraudulent conveyance. The complaint prayed for damages against defendants, a declaration that defendants held title to the leasehold interest in certain real property (known as Anthony Chabot Regional Park) in constructive trust for plaintiffs, an order compelling defendants to convey to plaintiffs title to the leasehold interest, and for an accounting of the rents and profits from the leasehold. Edward R. Fitzsimmons appeals from the judgment of the superior court imposing a constructive trust, upon his interest in the Willow Park Public Golf Course, in favor of respondents. Respondents cross-appeal from the judgment.

In Alameda County in the late summer and fall of 1965, respondents and representatives of Dorado-Pacific Investment Corporation (hereinafter Dorado) orally agreed that in consideration of certain payments made by respondents to Dorado that respondents would become limited partners in Willow Park Public Golf Course, a limited partnership which

---

[1]In addition to Benny Kraus, the other plaintiffs were Thomas Lenihan, Patricia Lenihan, Manuel Andrade, Mary Andrade, Louis P. Joaquin, Helen P. Joaquin, Frank M. Lopes, Barbara G. Lopes, Samuel C. Melino, Lorraine J. Melino, Manuel Senna, Isabella Senna, Robert R. Phillips, Mildred S. Phillips, Albert G. Rinetti, Lena Rinetti and Albert J. Rinetti.

supposedly had been formed by Dorado. Dorado was represented in these transactions by its vice-president, Ray G. Montalvo who was operating under the direction and control of the president of the corporation, Palmer Crow. Montalvo and Crow agreed with respondents that the moneys paid by respondents were to be used by the limited partnership for the purpose of developing Willow Park Public Golf Course and for no other purpose, and that the moneys would be held in escrow and in trust until devoted to the development of Willow Park Public Golf Course.[2]

Respondents performed all the conditions, covenants and promises which they were required to perform under the contract. Dorado, Palmer Crow and Ray Montalvo, however, breached the agreements: they never created the limited partnership; they did not hold in escrow or in trust the moneys given to them by respondents; nor did they use respondents' funds exclusively for development of the golf course. The trial court found that, at the time of the making of these agreements, Montalvo and Crow falsely represented to respondents that they would perform the agreements and that Montalvo and Crow knew that their representations to respondents were not true. Although the representations of Montalvo

[2]Respondents' respective payments to Dorado were as follows:

SCHEDULE OF INVESTMENTS

| A<br>*Plaintiff* | B<br>*Date of Payment* | C<br>*Amount Invested* |
|---|---|---|
| BENNY KRAUS | Sept. 7, 1965 | $30,000.00 |
| THOMAS LENIHAN<br>PATRICIA LENIHAN | Sept. 2, 1965 | 14,575.00 |
| MANUEL ANDRADE<br>MARY ANDRADE | July 27, 1965 | 4,500.00 |
| LOUIS P. JOAQUIN<br>HELEN P. JOAQUIN | Sept. 18, 1965 | 5,000.00 |
| FRANK M. LOPES<br>BARBARA G. LOPES | Oct. 9, 1965 | 10,000.00 |
| SAMUEL C. MELINO<br>LORRAINE J. MELINO | Sept. 16, 1965 | 5,000.00 |
| MANUEL SENNA<br>ISABELLA SENNA | Sept. 14, 1965 | 5,000.00 |
| ROBERT R. PHILLIPS<br>MILDRED S. PHILLIPS | Oct. 22, 1965 | 5,000.00 |
| ALBERT G. RINETTI<br>LENA RINETTI | Aug. 10, 1965 | 4,000.00 |
| ALBERT J. RINETTI | Aug. 10, 1965 | 4,000.00 |

and Crow were in fact false, respondents made the payments to Dorado because respondents believed and relied upon these representations. The trial court also found that Dorado, Montalvo and Crow failed to obtain a permit from the California Corporations Commissioner for the sale of partnership' interests as required by section 25500[3] of the Corporations Code.

On or about September 23, 1965, Dorado entered into an agreement with the East Bay Regional Park District by which the park district agreed to lease certain land in Anthony Chabot Regional Park in Alameda County to Dorado in consideration of its developing a golf course on that land according to certain specifications.

On or about October 22, 1965, and just shortly before it filed a petition under chapter XI of the Bankruptcy Act, Dorado assigned all of its rights in the agreement with the East Bay Regional Park District to Willow Park Public Golf Course, a California corporation. Under the assignment agreement Willow Park agreed to assume Dorado's indebtedness to all those persons who had paid money to Dorado for the development of the golf course.[4] Willow Park accepted the assignments from Dorado and agreed to assume the indebtedness. Sometime thereafter, Dorado was adjudicated a bankrupt.

The corporation, Willow Park Public Golf Course, had been organized by appellant Edward R. Fitzsimmons, Rene Viviani, Richard R. Davis, Leroy Spaggiari and Raymond Montalvo. It existed as a corporate shell;

---

[3] At the time of the events in question section 25500 of the Corporations Code read as follows: "No company shall sell any security of its own issue, except upon a sale for a delinquent assessment against the security made in accordance with the laws of this State, or offer for sale, negotiate for the sale of, or take subscriptions for any such security, until it has first applied for and secured from the commissioner a permit authorizing it so to do." (Repealed by Stats. 1968, ch. 88, § 1, p. 243; see now Corp. Code, §§ 25103, 25110, 25120, 25130.)

[4] The persons who had invested in Dorado for its golf course project and the amounts they had paid at this time were as follows:

| Name | Amount | Name | Amount |
|---|---|---|---|
| Benny Kraus | $30,000.00 | Albert G. & Lena Rinetti | 4,000.00 |
| Thomas & Patricia Lenihan | 14,575.00 | Albert J. Rinetti | 4,000.00 |
| Manuel & Mary Andrade | 4,500.00 | Harold Andrade | 2,000.00 |
| Louis P. & Helen P. Joaquin | 5,000.00 | Al's Food Market | 5,000.00 |
| Frank M. & Barbara G. Lopes | 10,000.00 | Katharine S. Aiton | 5,000.00 |
| Samuel C. & Lorraine J. Melino | 5,000.00 | Lawrence Robert Bovo | 4,000.00 |
| | | Lawrence Bovo | 4,500.00 |
| Manuel & Isabella Senna | 5,000.00 | Jack & Charlene Bonetti | 800.00 |
| Robert R. & Mildred S. Phillips | 5,000.00 | O. A. Blackwell | 800.00 |

no unencumbered capital was ever placed at its risk. It was never authorized to nor did it ever issue stock. The trial court found, however, that it was organized in good faith. The corporation never paid any sums in return to those persons who invested in Dorado. Its corporate status was suspended on February 1, 1967.

On or about June 10, 1966, Richard F. Davis, Leroy Spaggiari, Rene Viviani and appellant Edward R. Fitzsimmons, as general partners, formed Willow Park Public Golf Course, a limited partnership.[5] The general and limited partners signed a partnership agreement which was prepared by the general partners. The limited partners in Willow Park Public Golf Course limited partnership consisted of all those people who had invested in Dorado except for respondents.

| | | | |
|---|---|---|---|
| Edwin Belden DDS | 1,200.00 | Frank & Phyllis Maxwell | 800.00 |
| W. L. or Mrs. W. L. Bohanna | 800.00 | Mr. or Mrs. E. A. Nelsen | 1,000.00 |
| Harold K. Brisentine | 800.00 | George W. Obenauer | 5,000.00 |
| Fred or Florence DePaoli | 800.00 | Melvin Ornelles | 800.00 |
| Leonard W. Fosshage and Marion Fosshage | 5,000.00 | Peter M. Pence & Joan M. Pence, as Jt. Ten. | 800.00 |
| Ernest F. or Maxine L. Gallo | 1,000.00 | Manuel J. Piver or Irma Piver | 2,500.00 |
| Robert E. Jackson and Mary Lou Jackson | 800.00 | William M. Rinetti | 3,900.00 |
| Frank W. Kiefer | 5,000.00 | Al or Mildred Russo | 8,000.00 |
| John A. & Margaret L. Killough | 1,000.00 | T. F. Spindler MD | 5,000.00 |
| Dr. H. A. Kalsbeek | 800.00 | Fred and Lorraine Schneider | 5,000.00 |
| Mr. & Mrs. Albert Low | 5,000.00 | A. J. Silva | 1,000.00 |
| O. R. & R. Louise Lobb | 1,000.00 | Eugene P. & Jeanne Tomorug | 1,000.00 |
| Fred Martini | 800.00 | Fred Valcheck | 5,000.00 |
| James S. Martin | 10,000.00 | Rene & Marvell Viviani | 20,000.00 |
| | | | $207,975.00 |

It is to be noted, however, that the judgment provides that "Fred or Florence DePaoli" had invested $5,000, that "Leonard W. Fosshage and Marion Fosshage" had invested $1,000, and "Ernest F. or Maxine L. Gallo" had invested $5,000. The judgment also differed from the findings in that it provided that George Castanho, who was not mentioned in the findings, had invested $800. These discrepancies were not contested in the present appeal.

[5] The following people were named as limited partners in this partnership:

| | | | |
|---|---|---|---|
| Harold Andrade | $2,000.00 | Edwin Belden DDS | 1,200.00 |
| Al's Food Market | 5,000.00 | W. L. or Mrs. W. L. Bohanna | 800.00 |
| Katharine S. Aiton | 5,000.00 | Harold K. Brisentine | 800.00 |
| Fred Balcheck | 5,000.00 | Fred or Florence DePaoli | 800.00 |
| Lawrence Robert Bovo | 4,000.00 | Leonard W. Fosshage & Marion Fosshage | 5,000.00 |
| Lawrence Bovo | 4,500.00 | | |
| Jack & Charlene Bonetti | 800.00 | Ernest F. or Maxine L. Gallo | 1,000.00 |
| O. A. Blackwell | 800.00 | | |

Also on or about June 10, 1966, Willow Park Public Golf Course, the corporation, assigned to Willow Park Public Golf Course, the limited partnership, without consideration, all of its rights in the East Bay Regional Park District lease agreement. At the time of the assignments of its rights to the lease, Willow Park, the corporation, did not have sufficient assets to pay its indebtedness to respondents. Thereafter the corporation remained insolvent.

All of these matters were known to Willow Park, the corporation, and its officers and to the general partners of Willow Park, the limited partnership.

The trial court found that, in making representations to respondents in order to induce them to enter into a contract in the fall of 1965, defendants Dorado-Pacific Investment Corporation, Crow, and Montalvo "acted tortiously, fraudulently and oppressively." It also found that Dorado materially breached its contract with respondents and that Dorado, Crow, and Montalvo violated the California Corporate Securities Act.

The trial court further found that respondents and all those who had invested in Dorado's Willow Park Public Golf Course project were third party beneficiaries of the assumption contract entered into by Dorado and Willow Park Public Golf Course, a corporation, on or about October 22, 1965, and that Willow Park, a corporation, had breached this contract by failing and refusing to repay respondents and the other investors the amounts they had invested in Dorado. The court determined that defendants Willow Park Public Golf Course, a limited partnership, and Davis, Spaggiari, Viviani, and appellant Fitzsimmons held their interest

| | | | |
|---|---|---|---|
| Robert E. Jackson & Marylou Jackson | 800.00 | George W. Obenauer | 5,000.00 |
| Frank W. Kiefer | 5,000.00 | Melvin Ornelles | 800.00 |
| John A. & Margaret L. Killough | 1,000.00 | Peter M. Pence & Joan M. Pence as Jt. Ten. | 800.00 |
| Dr. H. A. Kalsbeek | 800.00 | Manuel J. Piver or Irma Piver | 2,500.00 |
| Mr. & Mrs. Albert Low | 5,000.00 | Wm. M. Rinetti | 3,900.00 |
| O. R. & R. Louise Lobb | 1,000.00 | Al or Mildred Russo | 8,000.00 |
| Fred Martini | 800.00 | T. F. Spindler MD | 5,000.00 |
| James S. Martin | 10,000.00 | Fred & Lorraine Schneider | 5,000.00 |
| Frank & Phyllis Maxwell | 800.00 | A. J. Silva | 1,000.00 |
| Mr. or Mrs. E. A. Nelson | 1,000.00 | Eugene P. & Jeanne Tomorug | 1,000.00 |
| | | Rene & Marvell Viviani | 20,000.00 |

Except for respondents, these people were all those who had invested in Dorado. Respondents were not named limited partners.

in the golf course in trust for the benefit of respondents and the other investors in Dorado. The court made respondents "limited partners" in the Willow Park Public Golf Course limited partnership and set the respective percentages of ownership of each of the general and limited partners. It then held that, with certain exceptions, the limited partnership agreement entered into between the general and limited partners in June of 1966 should govern the relationship between the partners.

█ Appellant raises for the first time on appeal the contention that all of the limited partners of Willow Park Public Golf Course limited partnership were "indispensable" parties to this litigation and that the trial court lacked jurisdiction over the cause because of the absence of such indispensable parties. Appellant argues that the judgment of the trial court reflects the fact that, in addition to imposing a constructive trust upon the partnership interests of appellant, Davis, Spaggiari and Viviani, the court purported to adjudicate the respective percentages of ownership in the Willow Park Public Golf Course limited partnership of not only the plaintiff "limited partners" (i.e., respondents) but of the absent limited partners as well.

At the time this litigation was initiated, section 389 of the Code of Civil Procedure read, in pertinent part, as follows:

"A person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be inequitably affected or jeopardized by a judgment rendered between the parties.

"A person who is not an indispensable party but whose joinder would enable the court to determine additional causes of action arising out of the transaction or occurrence involved in the action is a conditionally necessary party.

"When it appears that an indispensable party has not been joined, the court shall order the party asserting the cause of action to which he is indispensable to bring him in. If he is not then brought in, the court shall dismiss without prejudice all causes of action as to which such party is indispensable and may, in addition, dismiss without prejudice any cause of action asserted by a party whose failure to comply with the court's order is wilful or negligent.

"When it appears that a conditionally necessary party has not been joined, the court shall order the party asserting the cause of action to

which he is conditionally necessary to bring him in if he is subject to the jurisdiction of the court, if he can be brought in without undue delay, and if his joinder will not cause undue complexity or delay in the proceedings. If he is not then brought in, the court may dismiss without prejudice any cause of action asserted by a party whose failure to comply with the court's order is wilful or negligent."

If the absent limited partners were only conditionally necessary parties as distinguished from indispensable parties, any defect arising from their nonjoinder has been waived by appellant and cannot be asserted by him on appeal. (*King* v. *King* (1971) 22 Cal.App.3d 319, 325 [99 Cal.Rptr. 200].) "Contrastingly, it is frequently stated that the failure to join an indispensable party constitutes a jurisdictional defect which may be raised initially on appeal." (*King* v. *King, supra,* 22 Cal.App.3d at p. 325.) ■ Although many cases have so stated, the failure to join an "indispensable" party is not "a jurisdictional defect" in the fundamental sense; even in the absence of an "indispensable" party, the court still has the power to render a decision as to the parties before it which will stand. (See Hazard, *Indispensable Party: The Historical Origin of a Procedural Phantom* (1961) 61 Colum.L.Rev. 1254, 1255, 1282; Reed, *Compulsory Joinder of Parties in Civil Actions* (1957) 55 Mich.L.Rev. 327, 332-334; Note, *Necessary and Indispensable Parties* (1941) 29 Cal.L.Rev. 731, 738-740.) It is for reasons of equity and convenience, and not because it is without the power to proceed, that the court should not proceed with a case where it determines that an "indispensable party" is absent and cannot be joined.[6]

It is to be noted that section 389 of the Code of Civil Procedure was amended in 1971 to conform to rule 19, Federal Rules of Civil Procedure, the federal procedure concerning compulsory joinder of parties. (See *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 753, fn. 27 [135 Cal.Rptr. 345, 557 P.2d 929], U.S. app. pending; *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 407 [115 Cal.Rptr. 765, 525 P.2d 669]; *Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237, 241

---

[6]In *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574 [283 P.2d 704], and *Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 522 [106 P.2d 879], the California Supreme Court suggested that failure to join an "indispensable" party is a "jurisdictional" defect. In *Bowles,* however, the court pointed out: "It may be noted in this connection that, since this is not a collateral attack upon the order of the court, we are not faced with the question of whether the court lacked jurisdiction in the fundamental sense, but rather with the problem of whether the court acted in excess of its jurisdiction as that term is used in determining whether prohibition and certiorari are proper remedies. [Citation.]" (*Bowles* v. *Superior Court, supra,* 44 Cal.2d at p. 583.)

[120 Cal.Rptr. 803]; Law Revision Com. comment, Code Civ. Proc., § 389.)[7] Since the 1971 amendment to section 389, the California Supreme Court has not ruled on the matter,[8] but, in dicta, the Courts of Appeal have continued to state that the absence of an indispensable party deprives the court of jurisdiction over the subject matter (see, e.g., *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 214 [137 Cal.Rptr. 118]; *Vanoni* v. *County of Sonoma* (1974) 40 Cal.App.3d 743, 747 [115 Cal.Rptr. 485]; *Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611, 617 [114 Cal.Rptr. 404]). This is not, however, the correct rule under former section 389 of the Code of Civil Procedure, and it is clearly not the rule under rule 19, Federal Rules of Civil Procedure, and section 389, as amended in 1971.

---

[7]Section 389, as amended in 1971, sets forth the general principles as to compulsory joinder of parties. If, under the guidelines of section 389, an absentee is found by the court to be needed for a just adjudication of the case, the court must order his joinder if feasible. If the absentee is needed for a just adjudication, but his joinder is not feasible because he is not subject to process, there are some circumstances in which the action cannot proceed in his absence, the absent party thus being regarded by the court as "indispensable." In general, section 389 limits compulsory joinder to those situations where the absence of a person may result, as a practical matter, in substantial prejudice to that person or to the parties already before the court.

Section 389, as amended in 1971, provides in pertinent part:

"(a) A person who is subject to service of process and whose joinder·will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

[8]In *Serrano* v. *Priest, supra,* 18 Cal.3d 728, 753, the California Supreme Court commented as follows concerning section 389 as enacted in 1971: "Moreover, as we also said in the *Bank of California* case, in dealing with the doctrine of indispensable and necessary parties 'we should . . . be careful to avoid converting *a discretionary power or a rule of fairness in procedure* into an arbitrary and burdensome requirement which may thwart rather than accomplish justice.' (16 Cal.2d at p. 521; see also *Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 241 [42 Cal.Rptr. 107, 398 P.2d 147].)" (Italics added.)

In its recommendation and study in 1970, the California Law Revision Commission recommended that "Section 389 be revised to conform substantively to Federal Rule 19" (see Recommendation and Study relating to Counterclaims and Cross-Complaints, Joinder of Causes of Action, and Related Provisions, 10 Cal. Law Revision Com. Rep. (1970) pp. 500, 517). With one minor change (the addition of "without prejudice" to subdivision (b)), section 389 as revised in 1971 is identical to the federal rule. The Law Revision Commission comment on the 1971 amendment states, in part, as follows:

"Section 389 is revised to substitute practically in its entirety Rule 19 of the Federal Rules of Civil Procedure for former Section 389. The words 'without prejudice' have been added to the language of the Federal Rule in subdivision (b) of Section 389 merely to avoid any contrary implication that might be created by the omission of the somewhat similar provision formerly found in Section 389. See Wilson v. Frakes, 178 Cal.App.2d 580, 3 Cal.Rptr. 434 (1960).

". . . . . . . . . . . . . . . . . . .

"When joinder cannot be accomplished, the circumstances must be examined and a choice made between proceeding with or dismissing the action. The adequacy of the relief that may be granted in a person's absence and the possibility of prejudice to either such person or the parties before the court are factors to be considered in making this choice. *However, a person is regarded as indispensable only in the conclusory sense that in his absence, the court has decided the action should be dismissed. Where the decision is to proceed the court has the power to make a legally binding adjudication between the parties properly before it.*

". . . . . . . . . . . . . . . . . . .

"*Under the former law, an indispensable party had to be joined in the action; until and unless he was, the court had no jurisdiction to proceed with the case.* See, *e.g.,* Irwin v. City of Manhattan Beach, 227 Cal.App.2d 634, 38 Cal.Rptr. 875 (1964). *This absolute rule has been changed;* however, practically speaking, the change is perhaps more one of emphasis. The guidelines provided in Section 389 are substantially those that have guided the courts for years. See Bank of California v. Superior Court, 16 Cal.2d 516, 106 P.2d 879 (1940). These guidelines should require dismissal in the same circumstances where formerly a person was characterized as indispensable.

"As noted above, Section 389 has been revised to conform substantially to Rule 19 of the Federal Rules of Civil Procedure. Accordingly, the explanatory note prepared by the Advisory Committee in conjunction with the amendment of Rule 19 in 1966 is particularly helpful in describing the nature and effect of Section 389. This explanatory note is set out below with appropriate deletions and additions:

## "Advisory Committee's Note

### "*General Considerations*

"Whenever feasible, the persons materially interested in the subject of an action—see the more detailed description of these persons in the discussion of new subdivision (a) below—should be joined as parties so that they may be heard and a complete disposition made. When this comprehensive joinder cannot be accomplished—a situation which may be encountered . . . because of limitations on service of process [and] subject matter jurisdiction . . .—the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action.

"*Even if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process. But the court can make a legally binding adjudication only between the parties actually joined in the action.* It is true that an adjudication between the parties before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person. These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; *but they do not themselves negate the court's power to adjudicate as between the parties who have been joined.*

### "*Defects in the Original Rule*

"The foregoing propositions were well understood in the older equity practice, see Hazard, Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Colum.L.Rev. 1254 (1961), and Rule 19 could be and often was applied in consonance with them. But experience

showed that the [original] rule was defective in its phrasing and did not point clearly to the proper basis of decision." (Italics added.)

Therefore, as under federal rule 19, failure to join a party who may be regarded as "indispensable" is not, under section 389, a jurisdictional defect in the technical sense. Although the court has no jurisdiction of the absent party, and its judgment cannot bind him, the court does have jurisdiction of the existing parties and it has the power to make a judgment affecting their interests. It is for discretionary and equitable reasons, not for any want of jurisdiction, that the court may decline to proceed without the absent party. (See *Mayer* v. *Development Corp. of America* (D.Del. 1975) 396 F.Supp. 917, 922 at fn. 2; *Jacobs* v. *United States* (D.Ariz. 1973) 367 F.Supp. 1275, 1281; *Terrebonne Land Development Corp.* v. *Superior Oil Co.* (E.D.La. 1974) 65 F.R.D. 375, 377; *American Optical Co.* v. *Curtiss* (S.D.N.Y. 1973) 59 F.R.D. 644, 647 at fn. 4; see Wright, Law of Federal Courts (3d ed. 1976) § 71, p. 339; see also *Miracle Adhesives* v. *Peninsula Tile Assn.* (1958) 157 Cal.App.2d 591, 595 [321 P.2d 482].)[9] As the court stated in *Terrebonne Land Development Corp.* v. *Superior Oil Co., supra,* 65 F.R.D. at page 377: "Indispensability is not however, a matter of jurisdiction in the strict sense of the term. It is more accurately a consideration so crucial to equity that dismissal is in order if, for whatever reason, an indispensable party cannot be joined. The thesis that a suit should be dismissed because an indispensable interest is not party to it is based on the concept that the court lacks power to enter effective relief in the absence of such an interest. 3A Moore's Federal Practice ¶19.05[2]. Indispensability is tested by looking to the status of the parties at the time relief is to be entered, or at the time the issue of indispensability is raised, rather than to their status at the time the suit is filed . . . ."

In *King* v. *King, supra,* 22 Cal.App.3d 319, 326, the court stated with regard to former section 389:

" 'The indispensable party doctrine operates harshly on parties before the court, and the situations in which it applies are few. In the *Bank of California* case [citation omitted], the court cautioned against the common blunder of regarding any "necessary party" as "indispensable," and observed that "we should . . . be careful to avoid converting a

---

[9]Since section 389 was amended in 1971 to conform to rule 19, Federal Rules of Civil Procedure, the courts have stated that "It is therefore appropriate to use federal precedents as a guide to application of the statute." (*Conrad* v. *Unemployment Ins. Appeals Bd., supra,* 47 Cal.App.3d 237, 241.)

discretionary power or a rule of fairness in procedure into an arbitrary and burdensome requirement which may thwart rather than accomplish justice." ' ,(3 Witkin, Cal. Procedure (2d ed. 1971) p. 1808 [quoting in part *Bank of California* v. *Superior Court, supra,* 16 Cal.2d at p. 521]; see also *Muggill* v. *Reuben H. Donnelley Corp.,* 62 Cal.2d 239, 241 [42 Cal.Rptr. 107, 398 P.2d 147].)

"Where a case has been fully tried without objection to the absence of parties and the claim that the absent parties were indispensable is raised for the first time on appeal, the rule's underlying policy considerations of avoiding piecemeal litigation and multiplicity of suits (see *Bank of California* v. *Superior Court, supra,* 16 Cal.2d at p. 520; Cal. Law Revision Com. Rep. (1970) p. 516) are of little consequence inasmuch as the judicial and litigant resources necessary to the litigation have already been expended. (See fn. 2, *ante.*) The only justification for the rule permitting the issue to. be raised for the first time on appeal is that the absence of a party has precluded the trial court from rendering any effective judgment between the parties before it."

■ Normally, in a suit to dissolve and wind up the affairs of a partnership, all of the partners are considered indispensable parties to the litigation. (*Rudnick* v. *Delfino* (1956) 140 Cal.App.2d 260, 264 [294 P.2d 983].) The present case was not an action for dissolution of a partnership. However, the trial court's decree directly affected the affairs of the partnership and set the respective percentages of ownership of all the general and limited partners, including those limited partners who were not before the court. We do not believe, however, that the judgment should be reversed on the ground that these absent limited partners were "indispensable" parties to this suit. The case has been fully tried, and until now, there has been no objection by appellant to the absence of parties.[10] ■ (See fn. 11.) Although there is some risk that appellant may be subjected to multiple lawsuits, "[t]he public policies against multiple litigation and futile litigation are of little consequence when the problem is raised for the first time on appeal following a full trial of the

[10]Appellant not only raises the matter for the first time on appeal but also opposed a motion to intervene below by 22 of the nonparty limited partners (on the basis of timeliness and other grounds). In their memorandum in support of motion for order granting leave to intervene, the proposed interveners pointed out the problem of possible multiple litigation, stating that "If the Court is concerned about other limited partners bringing other actions in the future, it can at this point order plaintiffs to furnish them notice and to bring them in as defendants." Opposing the motion to intervene and failing to raise the issue of indispensable parties, at least when pointed out by the proposed interveners at this point, appellant himself failed to take measures to avoid prejudice.

matter." (*King* v. *King, supra,* 22 Cal.App.3d 319, 326, fn. 2.)[11] Additionally, it is clear that the absentees' interests have not been "inequitably affected" by the judgment rendered between the parties. They are not bound by the judgment (see *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943 [119 Cal.Rptr. 139]) and could protect their interests by relitigating the matter. Moreover, in setting the respective percentages of ownership of the limited partners in the Willow Park Public Golf Course limited partnership, the trial court diluted only the interests of the general partners and did not adversely affect the interests of the absent limited partners. Therefore, in a real and practical sense, the interests of the absentees will not be prejudiced by the judgment.

■ Appellant contends that the judgment should be reversed because the trial court failed to make a finding of fact on a material issue. Appellant contends that the trial court erred in failing to make any finding of fact concerning whether any of the investors had recovered money from the Dorado bankruptcy proceedings and in failing to enter any conclusion of law regarding the effect of their filing claims in the bankruptcy estate. Appellant argues that, if any of the plaintiffs filed a claim in the bankruptcy proceeding, such act would constitute an election of remedies as to such plaintiffs.

Defendants Willow Park, Davis and Viviani, in their objections to the findings of fact and conclusions of law and proposed counterfindings, requested that the trial court make the following finding: "That the plaintiffs in this action made claims in bankruptcy proceedings which were instituted by DORADO-PACIFIC INVESTMENT CORPORATION and now, in addition to asserting those claims, assert this claim in this action." Upon the basis of this proposed finding, these codefendants sought the following conclusion of law: "That the plaintiffs made a voluntary election of remedies which did not include any claim against

---

[11]It should be noted that under federal rule 19 and section 389, as amended in 1971, an objection to the nonjoinder of an indispensable party may be raised at any time. However, where the issue of failure to join an indispensable party is raised for the first time on appeal, that fact is itself a factor which may be evaluated in considering joinder. (*Provident Bank* v. *Patterson* (1968) 390 U.S. 102, 109-110 [19 L.Ed.2d 936, 944-945, 88 S.Ct. 733]; *Geisser* v. *United States* (5th Cir. 1975) 513 F.2d 862, 872.) The court may also consider what measures the complaining party himself was able to take to avoid prejudice. The notes of the advisory committee referring to rule 19, Federal Rules of Civil Procedure (set out in the Cal. Law Revision Com. comment as "particularly helpful in describing the nature and effect of Section 389") state that "when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person (subdivision (a)(2)(ii)), and is not seeking vicariously to protect the absent person against a prejudicial judgment (subdivision (a)(2)(i)), his undue delay in making the motion can properly be counted against him as a reason for denying the motion."

the defendants in this action, but was limited to claims against DORADO-PACIFIC INVESTMENT CORPORATION and RAYMOND MONTALVO." Appellant argues that the trial court committed reversible error in failing to make such a finding of fact and conclusion of law. This contention must be rejected.

As discussed above, just hours before filing the chapter XI proceeding that terminated in bankruptcy, Dorado assigned its lease on the property that was to become the Willow Park Public Golf Course to Willow Park Public Golf Course, the corporation, in consideration of the corporation's agreeing to assume Dorado's indebtedness to all those persons who had invested in Dorado for the purpose of developing the golf course. The bankruptcy court accepted that the assignment had occurred prior to filing the chapter XI proceeding, and that it did not constitute a voidable preference. Nevertheless, apparently two of the plaintiff investors, Manuel Senna and Louis P. Joaquin, filed claims in the bankruptcy proceeding. Mr. Senna testified at trial that he did file a claim in the bankruptcy proceeding in an attempt to recover his loss. Mr. Joaquin also testified that he put in a claim in the bankruptcy proceeding but that it was denied. There was no evidence at trial that any of the investors had received dividends from the bankruptcy proceeding or that any of the other investors had even filed claims.

■ Moreoever, a third party creditor beneficiary can sue either the promisor or the promisee or may join them and obtain judgment against both. (*Dick* v. *Woolson* (1951) 106 Cal.App.2d 415, 419 [235 P.2d 119]; *Eastin* v. *Roberts, Carpenter & Co.* (1937) 19 Cal.App.2d 567, 571 [66 P.2d 224]; Rest., Contracts (1932) § 141; Ferson, *Contracts in Favor of Third Parties* (1955) 6 Hastings L.J. 354, 369.) Maintenance of an action by a third-party beneficiary is not precluded by the fact that a suit or claim might be brought also against the one to whom the promise was made. (*Johnson* v. *Holmes Tuttle Lincoln-Merc.* (1958) 160 Cal.App.2d 290, 297 [325 P.2d 193].) Although the creditor beneficiary may enforce the original obligation against either the promisor or the promisee or against both, he may not collect more than his due; satisfaction in whole or in part of either of these duties will operate to that extent as satisfaction of the liability of the other. (*Anderson* v. *Calaveras Cent. Min. Corp.* (1936) 13 Cal.App.2d 338, 343-344 [57 P.2d 560]; Rest., Contracts, § 141; 6 Hastings L.J., *supra,* 354, 369; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 500, at p. 430.)

Upon the cross-appeal, respondents contend that the trial court erred in stating in its conclusions of law that a "resulting" trust should be imposed. It is also respondents' contention that the court erred in imposing a constructive trust if that was the equitable trust the trial court intended to impose; respondents assert that they are entitled to a money judgment.

Respondents' original and amended complaints prayed for damages against defendants, a declaration that title to the leasehold interest was held by defendants as trustees of a resulting or constructive trust for the benefit of respondents, an order compelling defendants to convey to respondents the leasehold interest, and for an accounting of the rents and profits from the leasehold. In his opening statement, Roderic Duncan, attorney for respondents, stated that:

"We ask that the lease be found to be held in a constructive trust inasmuch as the plaintiffs were told they were acquiring an interest in the lease, itself.

"Our 15th cause of action speaks of a resulting trust, and we can't prove that, and I would dismiss the 15th cause of action at this point."

The trial court's conclusion of law number 5 states the following:[12] "Defendants WILLOW PARK PUBLIC GOLF COURSE, a limited partnership and DAVIS, SPAGGIARI, VIVIANI and FITZSIMMONS hold their interest in said golf course in a resulting trust of which plaintiffs and said other investors [listed] in Findings of Fact No. 11 are trustors."

Respondents point out that the fundamental characteristic of a resulting trust being to carry out the intention of the parties, it is evident that this case is not an appropriate one for the imposition of a "resulting" trust. (See *Dabney* v. *Philleo* (1951) 38 Cal.2d 60, 68 [237 P.2d 648]; *Bainbridge* v. *Stoner* (1940) 16 Cal.2d 423, 428 [106 P.2d 423]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 704, at pp. 2326-2328; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 123, p. 5481.) Conceding that a "resulting" trust is inappropriate under the facts of the present case, appellant contends that the fact that the term "resulting" trust was used was merely a technical error and that it is obvious that a constructive trust was properly imposed. Appellant points out that the findings of fact and conclusions of law signed by the trial court were

---

[12]The findings of fact and conclusions of law were drafted by respondents.

prepared by counsel for respondents, and that it was respondents' erroneous use of the term "resulting" rather than "constructive trust" that led the court to use the wrong word in its conclusions of law. Appellant points out that the two terms have often been confused by attorneys and by some courts. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 704, p. 2326 [noting that many California cases have upheld judgments imposing a trust even though the trial court may have mistakenly used the term "resulting trust" rather than "constructive trust"].) It is also contended that an appellate court has the power to modify the conclusions of law (see *Quigley* v. *Nash* (1934) 1 Cal.2d 502, 509 [36 P.2d 112]) and that a judgment should not be reversed on the basis of this type of technical error (see *Taylor* v. *Ballard* (1919) 41 Cal.App. 232, 235-236 [182 P. 464]).

■ A constructive trust is an equitable remedy imposed where the defendant holds title or some interest in certain property which it is inequitable for him to enjoy as against the plaintiff. Section 2224 of the Civil Code provides that: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." In order to create a constructive or involuntary trust as defined in section 2224, no conditions other than the three stated in that section are necessary: the existence of a res (property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act (see *Cramer* v. *Biddison* (1968) 257 Cal.App.2d 720, 724 [65 Cal.Rptr. 624]; *Estrada* v. *Garcia* (1955) 132 Cal.App.2d 545, 552 [282 P.2d 547]; *Rankin* v. *Satir* (1946) 75 Cal.App.2d 691, 695 [171 P.2d 78]; see also *Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 600 [124 Cal.Rptr. 297]). A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled (see *Clark* v. *Pullins* (1959) 171 Cal.App.2d 703, 708 [341 P.2d 73]).

■ In the present case, the facts are sufficient to support the imposition of a constructive trust on the basis of mistake (see *Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252, 254 [23 Cal.Rptr. 589, 373 P.2d 637]; *Knoblock* v. *Waale-Camplan Co.* (1956) 141 Cal.App.2d 870, 874 [297 P.2d 765]; *Monica* v. *Pelicas* (1955) 131 Cal.App.2d 700 [281 P.2d 269]; *First National Bank* v. *Wakefield* (1906)

148 Cal. 558, 561 [83 P. 1076]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 132, pp. 5488, 5489). ██ (See fn. 13.) The trial judge in his memorandum of decision[13] noted that, when defendants Willow Park Public Golf Course, the corporation, Rene Viviani, Richard F. Davis, Leroy Spaggiari, Raymond Montalvo and appellant Fitzsimmons assigned the East Bay District Park lease, without consideration to Willow Park Public Golf Course, the limited partnership, such defendants and appellant were acting under "a mistaken belief [that] they possessed the unrestricted right to convey the lease" from the corporation to the limited partnership. The trial court stated that:

"[W]hen the permit was denied in June, 1966, defendants erroneously believed they were in the legal and/or equitable position to offer an option to the investors, i.e., remain in the limited partnership on the terms set forth (Plaintiffs' Exhibit No. 6) or file claims as creditors in the Dorado bankruptcy and forfeit any interest they may have had in the lease and Willow Park project.

"As has been manifestly demonstrated, the basis of any right of defendants (as general partners) to define or limit the nature of the plaintiffs' interest in the lease was never adequately explained, and so far as the Court can determine, simply does not exist in the law. By reason of their financial commitments, however, defendants were the logical organizers and leaders of the entity succeeding the corporation, i.e., the limited partnership."

An involuntary trust was properly imposed in the present case, not because of the intention of the parties but because the person holding title to property, having wrongfully come into possession, whether by mistake or otherwise, would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. (Civ. Code, § 2224.) The mislabeling by the trial court of the involuntary trust as a resulting rather than as a constructive trust does not constitute reversible error here (Code Civ. Proc., § 475; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 299, p. 4283). Moreover, respondents may not complain of the error which they invited (see *Johnson v. Rich* (1957) 150 Cal.App.2d 740,

___

[13]While the trial court's memorandum of decision may not be used to impeach or modify the decree, it may be noted and may serve as a guide to the appellate court where the meaning of the judgment is unclear. (*Mears v. Mears* (1960) 180 Cal.App.2d 484, 504 [4 Cal.Rptr. 618], disapproved on another point, *See v. See* (1966) 64 Cal.2d 778, 785, [51 Cal.Rptr. 888, 415 P.2d 776]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, p. 4221; see also *Carpenter Foundation v. Oakes* (1972) 26 Cal.App.3d 784, 799 [103 Cal.Rptr. 368].)

747 [310 P.2d 980]; *Smith* v. *Royal Mfg. Co.* (1960) 185 Cal.App.2d 315, 320 [8 Cal.Rptr. 417]; *Tucker* v. *Cave Springs Min. Corp.* (1934) 139 Cal.App. 213, 218 [33 P.2d 871]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 267, pp. 4257-4258).

The judgment is affirmed. Purported appeals from miscellaneous orders are dismissed. Cross-respondents Willow Park, Viviani, and Davis will recover costs from cross-appellants Kraus et al. All other costs of the appeal and cross-appeal will be borne by Fitzsimmons.

Caldecott, P. J., and Rattigan, J., concurred.

On October 7, 1977, the opinion was modified to read as printed above.