Filed 2/23/22  Wardwell v. Vertical Infill CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEBORAH M. WARDWELL, individually and as trustor, etc.<br><br>Plaintiff and Appellant,<br><br>v.<br><br>VERTICAL INFILL, INC. et al.,<br><br>Defendants and Respondents. | D077908<br><br><br>(Super. Ct. No. 37-2019-00003035-CU-NP-CTL) |

APPEALS from judgments of the Superior Court of San Diego County, Randa M. Trapp, Judge.  Affirmed in part; reversed in part with directions.

Swierenga Law & Mediation and Kimberly M. Swierenga, for Plaintiff and Appellant.

Much Shelist, Issac R. Zfaty, Kaeleen E.N. Korenaga, and Ryan Burns, for Defendants and Respondents.

Deborah M. Wardwell sued Vertical Infill, Inc. (Vertical); its real estate broker Preferred Group Properties, Inc., doing business as Harcourts Prime Properties (Harcourts); Vertical founder and Harcourts agent Dean Lloyd Welsh; and Vertical attorneys Simis Law Group and Micole Elliot Simis (collectively, Simis) for financial elder abuse (Welf. & Inst. Code, § 15610.30)

and other claims.[1]  Wardwell alleged that Vertical wrongfully obtained title to her residence by purchasing it from her son Brian Burns (Brian), who had no authority to sell it.  Wardwell also sued her son Brian, his wife, and his law firm, but Wardwell's claims against them are not part of this appeal.

Vertical, Welsh, and Simis demurred to Wardwell's complaint.  Vertical primarily argued that it was a bona fide purchaser for value (BFP) and could not be liable for financial elder abuse regardless of Wardwell's alleged interest in the property.  It also argued that Wardwell had not alleged facts sufficient to constitute any other cause of action, including conversion and intentional infliction of emotional distress.  Welsh and Simis argued that they were not the purchasers of the property and Wardwell had not alleged any basis for their liability.  The trial court agreed with Vertical, Welsh, and Simis.  It sustained the demurrer without leave to amend.  Harcourts moved for judgment on the pleadings based on similar arguments.  The trial court granted its motion as well.

Wardwell appeals.  She contends she alleged facts sufficient to show that Vertical was not a BFP; Welsh, Simis, and Harcourts are liable as Vertical's agents; and her causes of action are viable.  We agree, in part. Wardwell has alleged sufficient facts to show Vertical was not a BFP.  The trial court therefore erred by sustaining Vertical's demurrer to Wardwell's cause of action for financial elder abuse.  Otherwise, however, Wardwell has not shown she alleged any other cause of action or demonstrated a reasonable possibility she could amend her complaint to do so.  We therefore affirm the judgments in part, reverse in part, and remand with directions.

---

[1]     Subsequent statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we draw our summary of the historical facts from the properly pleaded allegations of Wardwell's operative complaint and its exhibits. (See *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125; *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406.)

Wardwell and her husband purchased the residence in 2003 and began living there. As Wardwell's husband's health declined, her son Robert Scott Burns (Scott) and his wife Candace Leenheer (Candace) moved into the residence and helped care for him. Wardwell's husband died in 2014, and Wardwell obtained title to the residence in a settlement with her husband's estate. The next year, Brian asked Wardwell to transfer title of the residence to him "for tax planning purposes," which would allow Brian and his wife to avoid approximately $16,500 per year in taxes. Brian promised he would hold title for only one or two years and would return it whenever Wardwell requested. Wardwell executed a quitclaim deed transferring title to the residence to Brian. The deed noted that the transfer was for "[n]o consideration" and was a "[p]arent & child transfer." It was notarized and recorded. Wardwell continued to live at the residence and did not pay rent.

Two years later, Brian signed a letter memorializing their agreement. The letter stated that the residence was "in the name of Brian Burns for tax purposes only. I do not own the home, as upon the death of our mother it is going to be sold and the proceeds will be split between Brian Burns and Robert Scott Burns 50/50. In the event of my death, the home will go into the name of Robert Scott Burns." Wardwell and Brian's wife signed the letter as well.

3

The next year, after the roof and ceiling in the residence began to leak, Wardwell discovered that Brian had drained her bank accounts of money. Wardwell demanded that Brian reimburse her and reconvey title to the residence back to her. Brian promised he would do so, but he did not follow through.

Instead, without informing Wardwell, Brian sold the residence to Vertical "for far under market value." Brian and his wife signed deeds transferring the residence to Vertical. A realtor served Candace with a "Notice to Quit" claiming that PDQ Investments LLC owned the home. Candace told the realtor that the residence belonged to Wardwell, who resided there with Candace and Scott. Candace called Simis, who was listed on the Notice to Quit, and left voicemails informing Simis that Wardwell was the owner of the residence, she was having a title dispute with her son Brian, and she was pursuing financial elder abuse claims against him. Candace also emailed Simis the letter agreement between Brian, his wife, and Wardwell. Simis talked with Candace the next day, thanked her for the information, and said he would look into the dispute. In response to a follow-up email requesting the names of the residence's occupants, Candace identified herself, her husband Scott, their children, and Wardwell.

A few days later, Simis "caused to be posted" a " '60 Day Notice to Terminate Tenancy' " addressed to Candace, Scott, and " 'all unknown occupants.' " It did not identify Wardwell. The notice listed Vertical as the owner of the residence. Candace emailed Simis again asking why neither Vertical nor its agents tried to investigate Wardwell's competing property claim or her elder abuse allegations.

Vertical, Welsh, Simis, and Harcourts knew that Wardwell (and others) lived at the residence, that Wardwell had transferred title to Brian for no

consideration, and that it took multiple deeds to transfer title to Vertical (from Brian and his wife). The purchase price was $550,000, which was "hundreds of thousands of dollars below fair market value."

For her financial elder abuse claim, Wardwell alleged that Vertical, Welsh, Simis, and Harcourts violated the statute "by taking, secreting, appropriating, obtaining, and/or retaining Plaintiff's property (specifically, Plaintiff's property rights including, but not limited to, her rights to the HOME title, use of the HOME, and possession of the HOME) for a wrongful use, or with intent to defraud, or by undue influence." They "willfully and negligently" ignored Wardwell's property rights, failed to investigate her elder abuse claims, and eventually evicted Wardwell from her home in an unlawful detainer action. They did not return Wardwell's property on demand and instead used it for their own benefit.

For her intentional infliction of emotional distress cause of action, Wardwell incorporated her prior allegations regarding defendants' conduct. She said that Vertical, Welsh, Simis, and Harcourts "intended to cause serious emotional distress to Plaintiff, or they knew and disregarded the risk that, by their conduct, they would be inflicting serious emotional injury upon her."

Wardwell alleged a cause of action for conversion against Vertical but not the other defendants at issue here. She alleged that Vertical "committed conversion by receiving the real property from Brian and [his wife]—who did not have the right to give it away—and retained it and exercised dominion and control over it, and ultimately sold it to a third party, with the intention or purpose of keeping the sale proceeds for itself."

Wardwell also alleged three causes of action based on theories of constructive trust, unjust enrichment, and equitable estoppel. Wardwell's

5

prayer for relief included requests for various declarations regarding ownership of the residence, general and special damages, double and treble damages, exemplary damages, restitution, and attorney fees.

As noted, Vertical, Welsh, and Simis demurred to Wardwell's complaint. Welsh maintained that the complaint identified him as the chief executive officer of Vertical and an agent for Harcourts, but it did not allege any facts that would impose liability on him personally. Simis contended the complaint alleged only that he acted as legal counsel to Vertical, not that he was subject to liability in his personal capacity. Vertical primarily contended it was a BFP and therefore could not be liable for financial elder abuse. It also argued that it could not be liable for conversion because that tort applies only to personal property, not real property. Vertical, Welsh, and Simis asserted that Wardwell's cause of action for intentional infliction of emotional distress was defective because their alleged acts were not extreme or outrageous, and Wardwell had not alleged facts showing an intent to cause emotional distress or reckless disregard of the risk of doing so. Lastly, they argued the various remedies that were alleged as causes of action were unavailable or not independently viable.

In opposition, Wardwell argued that Vertical was not a BFP because Wardwell resided at the property at the time of the purchase, so Vertical had a duty to inquire about her potential rights to the property. Vertical had also purchased the property at a price "substantially below market value," which put Vertical on notice that Brian's title was defective. Wardwell claimed that Welsh and Simis were liable because they conspired with Vertical to wrongfully obtain and retain Wardwell's property. She claimed Vertical, Welsh, and Simis had acted in an extreme and outrageous manner after

6

purchasing the residence, and her conversion claim was based on the theft of proceeds from the sale of her home.

After hearing argument, the trial court sustained the demurrer. In a written order, the court found that Wardwell had not pled facts to show that Vertical had actual or constructive notice of her competing claim to the property. Likewise, there were no facts pled against Welsh and Simis other than the bare conclusion that they were conspirators. Wardwell had failed to allege facts sufficient to state any claim. The court dismissed Wardwell's complaint with prejudice and entered judgment accordingly.

Harcourts answered the complaint and filed a motion for judgment on the pleadings. It argued that Wardwell's complaint failed to state a cause of action for substantially the same reasons as the earlier demurrer. The court granted the motion and entered judgment against Wardwell.[2]

DISCUSSION

I

*Standards of Review*

"The sustaining of a demurrer without leave to amend is reviewed de novo. The reviewing court exercises its independent judgment as to whether a cause of action has been stated as a matter of law." (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 648.) "A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the

---

[2]    Harcourts moved for sanctions on the ground that Wardwell's complaint against Harcourts was frivolous and maintained for an improper purpose. (See Code Civ. Proc., § 128.7.) The trial court granted the motion and awarded sanctions against Wardwell's counsel in the amount of $8,690. This court previously informed the parties that this appeal does not include review of the sanctions order because the notices of appeal filed by Wardwell and her counsel did not identify that particular order. (See *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171.)

same de novo standard of review." (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670 (*Adams*).)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); see *Adams*, *supra*, 51 Cal.App.5th at pp. 670-671.)

We adopt "a liberal construction of the pleading" and draw "all reasonable inferences in favor of the asserted claims." (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143.) But "[w]here a pleading includes a general allegation, such as an allegation of an ultimate fact, as well as specific allegations that add details or explanatory facts, it is possible that a conflict or inconsistency will exist between the general allegation and the specific allegations. To handle these contradictions, California courts have adopted the principle that specific allegations in a complaint control over an inconsistent general allegation. [Citations.] Under this principle, it is possible that specific allegations will render a complaint defective when the

8

general allegations, standing alone, might have been sufficient." (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235-1236.)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." ' " (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554-555.) " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).) " 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

II

*Financial Elder Abuse*

The Elder Abuse and Dependent Adult Civil Protection Act (§ 15600 et seq.) provides remedies for elders and dependent adults who are subjected to financial abuse. (§ 15657.5.) Financial abuse occurs when, among other

9

things, a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." (§ 15610.30, subd. (a)(1).) A person or entity may also be liable for assisting in such conduct. (§ 15610.30, subd. (a)(2).)

Under the statute, "a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." (§ 15610.30, subd. (c).) A " 'representative' " includes an "attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney." (§ 15610.30, subd. (d)(1).)

The requirement of "wrongful use" is deemed satisfied where the person or entity "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." (§ 15610.30, subd. (b).) The harm contemplated by the statute includes financial harm; it need not be physical harm or mental suffering. (*Mahan v. Charles W. Chan Insurance Agency, Inc.* (2017) 14 Cal.App.5th 841, 866; *Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1316.)

Vertical demurred to this cause of action on the ground that it was a BFP of Wardwell's residence. Setting aside whether Vertical could be liable for financial elder abuse even if it were a BFP, we conclude Wardwell's allegations do not establish that Vertical was a BFP. Instead, they sufficiently allege the opposite.

" 'It is "black-letter law" that a bona fide purchaser for value who acquires his or her interest in real property without knowledge or notice of another's prior rights or interest in the property takes the property free of

10

such unknown interests.' [Citations.] Conversely, 'it is an equally well-established principle of law that any purchaser of real property acquires the property subject to prior interests of which he or she has actual *or constructive* notice.' [Citation.] 'Actual notice is defined as "express information of a fact," while constructive notice is that "which is imputed by law." ' " (*Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 107.) The determination of whether a party is a BFP is ordinarily a question of fact. (*Id.* at p. 109.)

"[T]he two elements of being a BFP are that the buyer (1) purchase the property in good faith *for value*, and (2) have no knowledge or notice of the asserted rights of another." (*Melendrez v. D&I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251.) For purposes of this appeal, at least, Wardwell does not appear to dispute that Vertical purchased the residence for value. Wardwell primarily argues that Vertical cannot satisfy the second element, the absence of knowledge or notice of the rights of another. We agree.

Wardwell alleges she lived in the residence, and believed she was still its owner, when Vertical purchased the property. Wardwell's possession of the residence was sufficient to put Vertical on notice of her property rights. "As a general rule, possession of real property is constructive notice to any intending purchaser or encumbrancer of said property. This rule is so well established that citation of authority is hardly necessary. . . . This rule applied even in the case of a grantor remaining in possession after execution and delivery of a deed to his vendee." (*J.R. Garrett Co. v. States* (1935) 3 Cal.2d 379, 381; accord, *Pell v. McElroy* (1868) 36 Cal. 268, 273 ["The simple, independent fact of possession is sufficient to raise a presumption of interest in the premises on behalf of the occupant."].)

11

" 'The possession required to impart notice to a subsequent purchaser must be open, notorious, exclusive and visible, and not consistent with the record title.' [Citation.]  If either a tenant or a stranger is in possession of leased premises, the purchaser is charged with all those facts which might have been ascertained had a reasonably diligent inquiry been made. [Citations.]  ' "Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property, and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such knowledge as would be gained by examination of the public records." ' " (*Claremont Terrace Homeowners' Assn. v. United States* (1983) 146 Cal.App.3d 398, 408-409 (*Claremont Terrace*).)  "The circumstances of each case dictate whether an inquiry should be made, a determination which ordinarily involves a question of fact." (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 366.)

Liberally construing Wardwell's complaint, we conclude she sufficiently alleged that she was in open, notorious, exclusive, and visible possession of the residence.  She had lived there for many years, with her son Scott and his wife Candace, and she was engaged in an active dispute with her other son Brian over title to the property.  Vertical claims, without citation to authority, that Wardwell's allegations are insufficient because Wardwell did not allege that Vertical or its agents *knew* Wardwell was in possession of the property.  Vertical's claim is unpersuasive because such knowledge is not required.  It is possession itself that imparts notice, which is why it must be open, notorious, exclusive, and visible.  (*Claremont Terrace*, *supra*, 146 Cal.App.3d at pp. 408-409; accord, *In re Gulino* (9th Cir. 1985) 779 F.2d 546, 550 & fn. 2.)  "A purchaser may not[,] by failing to acquaint herself with the open and clearly discernible possession and use of the land by another

12

than her prospective vendor[,] avoid making inquiry on the subject, and thereby evade the rule in regard to notice as well as its consequences. [Citation.] The buyer . . . was bound to know who was in possession of the property and is chargeable with notice of the occupants' title." (*Taylor v. Ballard* (1919) 41 Cal.App. 232, 238.)[3]

As one leading treatise explains, "A purchaser or encumbrancer is required to inspect the property to be transferred or which will become collateral and is charged with knowledge of information that would be revealed by a reasonable inspection of the property. 'One who purchases real estate is bound to know who is in possession thereof and is chargeable with notice of the occupant's title.' " (4 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 10:84, fns. omitted.)

Wardwell's possession was also inconsistent with the record title, which listed only Brian as the owner. Vertical argues that Wardwell's possession was consistent with the title because she was Brian's mother. It does not cite any authority supporting this argument. At this stage, Wardwell's allegations are sufficient. The fact that Wardwell is the mother of the record owner does not conclusively demonstrate that her possession is consistent with the title. The parent-child relationship does not preclude the possibility, as here, of a dispute over property rights. Indeed, many such disputes might arise in the context of related individuals. The rule that possession imparts

---

3    Although her pleading is somewhat unclear, Wardwell claims in her briefing that she alleged Vertical, Welsh, Simis, and Harcourts knew Wardwell was living on the property at the time of the sale. Thus, even if knowledge were a requirement, we would allow Wardwell leave to amend to clarify and confirm such an allegation.

constructive notice serves the same purpose in this situation as in non-family contexts.[4]

Our conclusion is supported by Wardwell's allegation that Vertical purchased the residence for considerably less than market value. "While mere inadequacy of consideration may not be sufficient to deprive one of his position as a purchaser for value, an offer by a vendor to sell for a grossly inadequate price is a circumstance which should place the purchaser on his guard and may be such as to require that he make a reasonable inquiry as to the title of the vendor not disclosed by the records. If the sum which the vendor is willing to take is grossly disproportionate to the value of the thing which is the subject of the negotiation, it is strong proof of a defective title, and sufficient to put a prudent person upon inquiry, and if the purchaser neglects to prosecute such inquiry diligently, he may not be awarded the standing of a *bona fide* purchaser." (*Rabbit v. Atkinson* (1941) 44 Cal.App.2d 752, 757-758.)

Vertical disputes Wardwell's allegation with evidence that the home was not in good condition. However, this evidence is not fatally inconsistent with Wardwell's allegation. The residence could have been sold for less than market value even considering its poor condition. We must credit Wardwell's

---

[4]    Vertical references the concepts of "hostile" or "adverse" possession, but it does not cite any authority or offer any cogent legal argument that such concepts are relevant to the question of inconsistency of title. Vertical also emphasizes Wardwell was "a complete stranger" and neither Vertical nor its agents had any relationship with her. Such a relationship is not required. Possession imparts notice to a prospective purchaser even in the absence of a preexisting relationship. " 'It is a general rule that possession of real property is constructive notice to *any* intending purchaser or encumbrancer of the property of all the rights and claims of the person in possession which would be disclosed by inquiry.' " (*Claremont Terrace, supra*, 146 Cal.App.3d at p. 408, italics added.)

allegations. "At this pleading stage of the case, we must accept those allegations as true. [Citation.] We do not question petitioners' ability to prove them." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 483.) Vertical also focuses on whether it purchased the property for value at all, but that inquiry is relevant to the first element of the BFP analysis, rather than this second element.

Vertical argues that Wardwell's financial elder abuse cause of action fails because Wardwell has not alleged "wrongful use" under the statute. The primary basis for Vertical's argument appears to be its status as a BFP. Because Wardwell's allegations do not require a finding that Vertical was a BFP, Vertical's argument is unpersuasive. It is unclear whether Vertical argues that Wardwell's allegations are insufficient, separate and apart from the BFP issue. To the extent we can discern such an argument, it is unpersuasive. Vertical cites *Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 657-658, but that opinion considered a contractual dispute where an insurance company acted under a good faith interpretation of its rights under the contract. Vertical's purchase of Wardwell's residence, under circumstances where it had constructive notice of her competing property right, is not comparable.

Our conclusions regarding Vertical do not automatically apply to the other defendants, however. Welsh, Simis, and Harcourts did not purchase Wardwell's residence. Wardwell asserts that they are liable because they acted "in conspiracy with" Vertical to wrongfully obtain and retain Wardwell's property. Beyond this bare conclusion, Wardwell does not support her assertion with reasoned legal argument or citation to authority. It is therefore waived. (See *Cahill, supra,* 194 Cal.App.4th at p. 956; *S.C., supra,* 138 Cal.App.4th at p. 408.) Wardwell also contends Welsh, Simis, and

15

Harcourts are vicariously liable because they are Vertical's agents. But the authority cited by Wardwell establishes only that a principal may be liable for its agent's torts. (See *Balfour, Guthrie & Co. v. Hansen* (1964) 227 Cal.App.2d 173, 192.) It does not discuss whether and under what circumstances an agent may be liable based on his participation in his principal's torts, and neither does Wardwell.

Wardwell argues that the "Respondents" ratified or had "imputed knowledge of" a fraud committed by Welsh and Simis. Wardwell fails to show, however, that she sufficiently alleged any such fraud. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638, 645.) Nor does she show how any such fraud relates to the elements of financial elder abuse under the circumstances here. Additionally, as to Harcourts, Wardwell cites its duty as Vertical's broker to "disclose reasonably obtainable material information." (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25.) But this duty runs to Vertical, not to Wardwell. Wardwell has not shown that the alleged violation of this duty supports a cause of action by Wardwell.

In general, although an agent is always liable for his own torts (see, e.g., *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68), Wardwell has not shown she alleged the basis for any liability here. We therefore conclude the trial court erred by finding that Wardwell had not stated a claim against Vertical, but it did not err as to Welsh, Simis, or Harcourts.[5]

---

[5] In light of our conclusion, and our standard of review, we need not consider whether the trial court improperly relied on prior orders in its BFP analysis.

III

*Wardwell's Other Tort Causes of Action*

Wardwell contends she has alleged or could allege facts sufficient to state a cause of action for intentional infliction of emotional distress, based on (1) Vertical's purchase of Wardwell's residence; (2) its decision (in cooperation with Welsh and Simis) to pursue unlawful detainer proceedings to evict Wardwell, after they had actual notice of Wardwell's dispute with her son; (3) a misrepresentation in their unlawful detainer complaint that a $3,000 monthly lease existed for the property; and (4) the subsequent sale of the residence to a third party for profit.

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579, 593 (*Cervantez*).)  "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Ibid.*)

Wardwell does little to support her contention other than cite *Cervantez.*  In that opinion, our Supreme Court approved of a claim for intentional infliction of emotional distress where, among other things, the plaintiff alleged that an off-duty police officer working as a security guard arrested him "either with knowledge that plaintiff had not committed any offense or with reckless disregard for whether he had or not." (*Cervantez, supra*, 24 Cal.3d at p. 593.)

The allegations in *Cervantez* are not comparable to the allegations at issue here. The defendants were not actually aware of Wardwell's competing claim until after Vertical purchased the residence. When Wardwell asserted her claim, Vertical brought the dispute to the courts. To the extent Vertical made a misrepresentation, Wardwell has not shown it was material. After Vertical prevailed in the unlawful detainer action, it sold the property. The conduct Wardwell alleges is not extreme, outrageous, or intolerable in a civilized community. Her allegations are insufficient to state a claim. (See *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1398 ["An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard."]; *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 67 ["A party is not subject to liability for infliction of emotional distress when it has merely pursued its own economic interests and properly asserted its legal rights."]; see also *Quinteros v. Aurora Loan Servs.* (E.D.Cal. 2010) 740 F.Supp.2d 1163, 1172 ["The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim."].)

Wardwell also contends she alleged facts sufficient to state a cause of action against Vertical for conversion. Her allegations run afoul of the general rule that "[t]he tort of conversion applies to personal property, not real property." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1295.)

Citing *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 568 (*Gherman*), Wardwell argues she has a valid claim for conversion of personal property, i.e., the proceeds from Vertical's sale of the property to a third party. We disagree. *Gherman* considered a specific situation: a joint venture in which one party held title to certain real property on behalf of the venture. (*Ibid.*) When that party repudiated the joint venture relationship and claimed the

18

entire property for itself, it "became obligated to pay plaintiffs damages in the form of money. In our view that constitutes a conversion *in equity*." (*Ibid*.) *Gherman* based its holding on the principle that a " 'partnership interest held by a copartner is treated in equity as personalty,' " even if the property at issue is realty. (*Ibid*.) Thus, the party holding title "converted plaintiffs' personal property [i.e., their interest in the joint venture] to their own use and benefit." (*Id*. at p. 569.) No similar situation exists here.[6]

IV

*Wardwell's Remedy Causes of Action*

Wardwell's complaint includes causes of action for constructive trust, unjust enrichment, and equitable estoppel. The latter two remedies are not independent causes of action. (See *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [unjust enrichment]; *Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 782 [equitable estoppel].) Wardwell has not shown the court erred by finding that these purported causes of action were insufficient.

A constructive trust may be alleged as an independent cause of action. (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 658-659; but see *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1023, fn. 3.) Wardwell argues that Vertical "hold[s] the profit from its quick sale of the property, as does Harcourts," but she does not cite any authority or make any cogent legal argument that her allegations are sufficient to impose a

---

[6]   Wardwell's opening brief contains a quotation that she attributes to *Gherman* but which does not appear in that opinion. It comes instead from an unpublished federal district court order. (See *Jacot v. Miller* (D. Guam, Sept. 28, 2017, No. 16-00074) 2017 WL 4320322, at *4.) The order makes clear that *Gherman*'s holding applies to "cases featuring ventures involving real property" and followed it in that context. (*Ibid*.)

constructive trust on either defendant.  Wardwell does not identify the elements of a constructive trust or explain how they are satisfied.  Her treatment is insufficient to support reversal.  (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *S.C.*, *supra*, 138 Cal.App.4th at p. 408.)  Our conclusion is without prejudice to such a remedy on remand, should Wardwell prove liability on a different cause of action.

V

*Leave to Amend*

Wardwell contends the trial court abused its discretion by denying leave to amend her complaint.  But she does not identify any new factual allegations, let alone explain how the new allegations would be sufficient to state a cause of action.  She has not met her burden of showing a reasonable possibility that the defects in her complaint can be cured.  (See *Blank*, *supra*, 39 Cal.3d at p. 318; see also *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)  She has not shown the trial court abused its discretion by denying leave to amend.

DISPOSITION

The judgments in favor of Welsh, Simis, and Harcourts are affirmed. The judgment in favor of Vertical is reversed with the following directions. On remand, the trial court shall (1) vacate its order sustaining Vertical's demurrer, (2) enter a new order overruling the demurer as to Wardwell's financial elder abuse cause of action and otherwise sustaining the demurrer without leave to amend, and (3) conduct further proceedings consistent with

this opinion.  In the interests of justice, the parties shall bear their own costs on appeal.


GUERRERO, J.

WE CONCUR:



IRION, Acting P. J.



DATO, J.