Filed 6/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>

JOHN DOE,

      Plaintiff and Respondent,

v.

THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA,

      Defendant and Respondent;

JANE ROE,

      Appellant.

</td><td>

A161546

(Alameda County
Super. Ct. No. RG18888616)

</td></tr>
</table>

John Doe filed a petition for writ of mandate against the Regents of the University of California (the University), seeking to set aside the University's decision to discipline John for sexually assaulting Jane Roe.[1] The trial court granted the petition, finding John was not afforded procedural due process during the University's investigation of Jane's complaint. Jane, who was not a party in John's writ case, moved to vacate the mandate order on the ground that the order is void because she did not receive notice of, and an opportunity to participate in, the writ proceeding. The trial court denied Jane's motion. We acknowledge that Jane's interests were affected by the

___

[1] Like the parties, we use pseudonyms to protect the privacy of these individuals. (See *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436, 1452, fn. 7.)

mandate proceeding, such that she may have been a real party in interest or a necessary party, but she has not established that she was an indispensable party. Nor has she established that the absence of even an indispensable party is grounds to void a judgment. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Incident and University Investigation

At the beginning of September 2015, John and Jane were friends and undergraduate students at the University of California, Santa Barbara (UCSB). On September 7, they went to a party together and then had a sexual encounter. The next day, a dispute arose about whether the encounter was consensual. Jane filed a police report about the incident, which led to a criminal investigation but no criminal charges.

Thirteen months after the alleged assault, on October 10, 2016, Jane filed a complaint about John with UCSB's Title IX and Sexual Harassment Policy Compliance Office. Title IX refers to Title IX of the Federal Education Amendments of 1972, 20 U.S.C. § 1681 et seq., which "prohibits sex discrimination under any education program or activity receiving federal funds." (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 598.) Title IX has been "applied to require universities to investigate allegations of sexual misconduct involving students." (*Doe v. University of Southern California* (2018) 29 Cal.App.5th 1212, 1215, fn. 2.)

Jane's complaint was assigned to investigator Kristi Johnson who interviewed Jane and obtained a list of witnesses from her. On October 31, 2016, John was notified about the pending investigation. In January 2017, Johnson left UCSB, and the matter was reassigned to investigator Brian Quillen.

Quillen interviewed John on May 17, 2017, which was the first time that a UCSB representative interviewed John about the incident. On May 24, after the fact-finding phase of UCSB's investigation was almost completed, Quillen met with John for an oral "debriefing" interview. During that meeting, Quillen provided verbal summaries of witness statements and John proposed questions for Quillen to ask Jane. The next day, UCSB Investigator Yahyavi interviewed Jane and asked her John's questions.

On August 9, 2017, Quillen submitted a report to the University's Office of Judicial Affairs (OJA). Quillen's report summarizes evidence collected during the investigation and contains express findings of fact and recommendations. Quillen found that John was aware, or should have been aware, that Jane was incapacitated during their sexual encounter. Quillen also found that John fabricated audio recordings that he represented to be Jane giving consent to the encounter. Quillen recommended that the OJA decide that John sexually assaulted Jane and suspend John for three years.

On August 24, 2017, the OJA issued a decision that adopted Quillen's findings and recommendation. John appealed the OJA's decision to UCSB's Interpersonal Violence Appeal Review Committee. As grounds for appeal, John alleged procedural errors, findings unsupported by substantial evidence, and a disproportionate punishment.

In October 2017, John submitted questions that he wanted the Review Committee to ask witnesses at the hearing on his appeal, which was held later that month. The only witnesses who appeared at the hearing were John, Jane, investigator Quillen, and OJA representative Suzanne Perkins. The Committee asked Quillen and Perkins for answers to John's questions. The Committee did not ask Jane questions, concluding that John's questions of her were outside the scope of his appeal.

3

On November 13, 2017, the Review Committee denied John's appeal and upheld his suspension.

## II. John's Writ Petition

In January 2018, John filed a petition against the University, seeking a writ of mandate under Code of Civil Procedure, section 1094.5 or, in the alternative, under section 1085.[2] John alleged that UCSB's disciplinary action against him was invalid because the University did not grant him a fair hearing, failed to proceed in the manner required by law, and made a decision unsupported by the evidence. Seeking independent review, John alleged he was denied his right under Title IX to continue his education without the stigma of having been found responsible for a sexual assault. John's petition names as respondent only the Regents of the University of California; Jane Roe is described as a "[n]on-party."

In January 2019, the trial court granted John's petition, in a 41-page order directing the University to set aside its decision against John. As a preliminary matter, the court construed John's pleading as a petition for a writ of mandate under section 1085, rather than one for administrative mandamus under section 1094.5. The court reasoned that " 'ordinary mandate' " is used to review agency decisions made without an evidentiary hearing. (Citing *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785.) Here, the Regents had acknowledged that UCSB's procedure for investigating sexual violence and sexual harassment complaints involves "a single investigator who makes factual findings, a single [administrator] at the OJA who makes a decision without a hearing, and an appeal board that reviews the decision for substantial evidence."

---

[2] Subsequent statutory references are to the Code of Civil Procedure unless another statute is cited.

However, UCSB's process did produce a defined record, which the University had filed with the court, and the court used the evidence in that record to review John's claims.[3]

John's first claim was that UCSB's process was unconstitutional because it did not afford John the right to question Jane. Recognizing that the precise requirements of due process depend on the context, the court found that in this case, the University was required to provide John an "effective opportunity to present questions to [Jane] in front of the finder of fact" because of "the felony level nature" of the charge against John, the "importance of the relative credibility" of Jane and John, and the "seriousness of the potential consequences" of the University's decision. The procedures followed in this case did not meet that standard, the court found. OJA, although it was the decisionmaker, was not the finder of fact. OJA relied on the facts as found by investigator Quillen,[4] and neither he nor John was present when investigator Yahyavi presented John's questions to Jane. As a result, the court concluded, UCSB's process was not constitutionally adequate for resolving Jane's complaint of sexual assault; it did not afford "the minimum due process opportunity to cross-examine required by the constitution." And the error was prejudicial because cross examination of Jane and perhaps other witnesses could have led to a different result, the court concluded.

---

[3] The University's "administrative record" is not included in the record on appeal.

[4] The Review Committee could have been a factfinder, as it held a hearing and had an opportunity to observe John and Jane, except that its role was limited to determining whether the investigator's findings of fact were supported by substantial evidence. Indeed, the Review Committee denied John the opportunity to ask Jane questions regarding the merits of her complaint at the appeal hearing.

John's second material claim was that the University failed to follow its own policies requiring an investigation that is impartial, thorough, timely and fair. The trial court found that the investigation was impartial and sufficiently thorough, but it was not completed in a timely manner, nor was it fair, given the seriousness of the charge. The court found the procedure to be unfair in several respects, including two due process violations so serious they amounted to structural error. First, one person served as both investigator and factfinder, creating an unacceptable " 'record exclusivity' " problem, in that "the investigator is the only person who has seen or heard the evidence" on which the factfinder relies. Second, this problem was exacerbated here because different investigators interviewed and evaluated the credibility of Jane and John, so there was no single finder of fact.

Finally, the court found that the University's record of the proceeding contained substantial evidence supportive of investigator Quillen's findings. Nevertheless, because of the due process violations, the court granted the petition for a writ of mandate directing the University to set aside and vacate the disciplinary decision against John. In directing John to prepare a proposed judgment, the court ordered that "[t]he judgment must not interfere with the discretion of the [University] regarding further proceedings."

On February 22, 2019, the court entered judgment and issued the peremptory writ of mandate. When the judgment was not appealed, it became final.

## III. Jane's Motion to Vacate

On June 9, 2020, Jane filed a motion to vacate the order granting the writ of mandate. Jane argued that the mandate order and resulting judgment are void because her statutory rights to notice and the opportunity to participate in the proceeding were violated. (Citing §§ 1088, 1107; *Palma*

6

*v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 (*Palma*).) Jane argued further that she was an indispensable party in the proceeding because her rights and interests were injured by the mandate order, which failed to "weigh her interests against [John's]."

In a declaration filed in support of her motion, Jane stated that she did not learn about the writ proceeding until after the court granted John's petition. Jane averred that in April 2019, her "CARE Advocate" notified her that the University intended to reopen her Title IX case against John. Jane contacted the University and a UCSB official sent her a copy of the mandate order. Jane had difficulty understanding the impact of the order and was unable to secure legal representation until March 2020, when a nonprofit organization agreed to represent her. With the assistance of counsel, Jane filed her motion to vacate and advised the University that she would not participate in a rehearing of her Title IX complaint until her motion was decided.

Jane's declaration described how UCSB's Title IX investigation had impacted her life, put her reputation at stake, and made her vulnerable to accusations that she lied about what happened. She stated further that her exclusion from John's writ proceeding made her feel that her experiences as a sexual assault victim and survivor were meaningless. Jane also opined that she had a right to present her "side of this story" before the court made its decision.

Opposing Jane's motion to vacate, John argued that Jane did not have a right to notice of his writ proceeding, and if Jane wanted to challenge the Title IX process, her recourse was against the University rather than John. The University filed a "Response" to Jane's motion, in which it declined to take a position as to whether Jane was entitled to relief from the judgment,

but disputed Jane's legal theory that the failure to provide her notice of the proceeding deprived the court of jurisdiction to issue the mandate order.

On September 24, 2020, the court denied Jane's motion to vacate the mandate order, outlining its reasons in a written order (the September 2020 order). First, the court rejected Jane's claim that the mandate order and resulting judgment were void for failure to give Jane notice of the proceeding. Jane's reliance on *Palma, supra*, 36 Cal.3d 171, was misplaced, the court found, because Jane was not a named party in the writ proceeding. Second, the court doubted that Jane was a real party in interest because John's request for a determination that his constitutional right to due process had been violated did not directly affect Jane's rights or status as a UCSB student. Third, even if Jane could establish that her interests in this case made her an indispensable party, her absence from the proceeding was not a jurisdictional defect but would only preclude the court from requiring Jane to take some action or depriving her of a substantial right; the order granting John's petition did not violate these rules, the court found. In Jane's absence, the court accorded "complete relief" to the parties to the action—John and the University—by "determining whether [the University's] process for adjudicating complaints of sexual assault complied with the accused's constitutional due process rights." It did not decide the separate issue of whether Jane's evidence would have supported disciplinary action against John under a process that complied with constitutional mandates. Finally, the court rejected Jane's contention that the University violated its own policy by failing to provide Jane with notice of the writ proceeding. The pertinent policy required the University to give Jane written notice "of any subsequent change to disciplinary results," and the court found that the

8

University complied with this policy when it provided Jane with a copy of the mandate order in April 2019.

## DISCUSSION

Jane contends that the September 2020 order denying her motion to vacate must be reversed because the mandate order issued in John's writ case is void. To resolve this claim, there are three important issues we are *not* called upon to decide. The first is the fundamental factual question of whether John sexually assaulted Jane. That question was not before the trial court, and the court's only observation about Jane's or John's credibility was that assessing their relative credibility was important to a reliable disciplinary decision. The second question we are not called upon to decide is what procedures the University should employ in making its disciplinary decisions. Although the trial court had a great deal to say on this subject in its mandate decision, that aspect of the court's decision is not before this court. Third, we do not address any claim Jane might have had against the University for its failure to notify her that John had filed this writ petition. We are not asked to review and do not affirm the trial court's finding that the University complied with its own policy requiring it to provide a Title IX complainant with notice of "any subsequent change to disciplinary results."

Instead, we are asked to decide a question of civil procedure: whether Jane's absence from the mandate proceedings so undermined the case before the court as to render the resulting judgment void. And before we decide that question, we must address some threshold procedural issues.

## I. The Order Is Appealable

Jane contends the denial of her motion to vacate is an appealable order, citing *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 135 (*Ryan*). Although respondents do not address this issue, we have an independent duty to

9

consider this jurisdictional prerequisite. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) We conclude the order is appealable, though not for the reason Jane advances.

*Ryan* holds that an order denying a motion to vacate a judgment under section 663 is an appealable order. (*Ryan, supra*, 3 Cal.5th 124.) Section 663 permits a court to set aside a judgment based on its own decision and to enter a new and different judgment where there is an "[i]ncorrect or erroneous legal basis for the decision," or the decision is "not consistent with or not supported by the facts." (§ 663.) Section 663a requires that a party intending to file this statutory motion provide timely notice of that intent, and it sets an outside limit of 75 days from the date the moving party was served with notice of entry of judgment for the court to rule on the motion. (§ 663a, subds. (a), (c).)

Jane's motion to vacate the mandate order is not a section 633 motion. Jane did not purport to file her motion under section 663, nor did she file on a timeline consistent with section 663a. Moreover, her motion did not request that the court set aside its judgment and enter a different judgment based on the same facts. Instead, Jane sought to vacate the mandate order and reopen the writ proceeding so she could participate in it. This type of relief is not afforded by section 633. (See e.g. *Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 203 [section 663 motion "does not lie to vacate a summary judgment and remit an action for trial"].)

Jane's motion is a nonstatutory motion to vacate a void order. Jane filed her motion on the stated grounds that the mandate order and judgment "were issued in violation of [Jane's] rights to due process, are void and must be vacated." A void order or judgment may be directly or collaterally attacked at any time. (*People v. American Contractors Indemnity Co.* (2004)

10

33 Cal.4th 653, 660 (*American Contractors*); *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228.)  Even when relief is not available under a statute, the court retains inherent power to vacate void orders.  (*Ibid.*; see also *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 15 [" '[a] stranger to an action who is aggrieved by a void judgment may move to vacate the judgment' "].)

The general rule is that nonstatutory motions to vacate are not appealable, but an exception applies when the appellant alleges that the underlying order or judgment is void.  (*Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267.)  The justification for this exception is that if an order or judgment is void, an order denying a motion to vacate that order or judgment is also void and appealable because it gives effect to a void judgment.  (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 (*Carlson*).)  Thus, the denial of Jane's nonstatutory motion to vacate the allegedly void mandate order is an appealable order.

## II.  Dismissal of the Appeal Is Not Required

John contends that this appeal must be dismissed because Jane lacks standing to appeal the mandate order or, alternatively, because Jane failed to exhaust her administrative remedies.  We reject both contentions.

### A.  Jane Has Standing

"Standing to appeal is jurisdictional [citation] and the issue of whether a party has standing is a question of law."  (*People v. Hernandez* (2009) 172 Cal.App.4th 715, 719–720 (*Hernandez*).)  To "have appellate standing, one must (1) be a party and (2) be aggrieved."  (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 13; see § 902.)  "We liberally construe the issue of standing and resolve doubts in favor of the right to appeal."  (*Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 13.)

First, Jane is now a party in this case. "[A] nonparty that is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by moving to vacate the judgment." (*Hernandez, supra*, 172 Cal.App.4th at p. 720.) "A motion to vacate in the trial court provides a means by which such a nonparty may become a party to the litigation with a right of appeal without the need to formally intervene in the action." (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1382.) Here, although Jane was not named as a party in John's writ petition, she became a party by filing a nonstatutory motion to vacate the mandate order—a motion that was briefed, argued, and denied on the merits.

Second, Jane is aggrieved by the mandate order. "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

John contends that Jane was not aggrieved by the denial of her motion to vacate because the mandate order does not injuriously affect her rights. According to this argument, the mandate order has no impact on Jane because it is a determination of John's due process rights in the Title IX disciplinary proceeding, and because the trial court did not make any ruling about Jane's rights. John posits that Jane's motion to vacate was dismissed for lack of standing, and this appeal should be dismissed for the same reason.

We disagree. The trial court did not dismiss Jane's motion to vacate for lack of standing. And, although the writ proceeding was an adjudication of John's due process rights, the resulting judgment reversed a disciplinary

12

decision that the University made to resolve Jane's sexual assault complaint. Reversal of that decision directly impacts and potentially injures Jane's education-related rights under Title IX. (See *Cannon v. University of Chicago* (1979) 441 U.S. 677 [Title IX creates an implied private right of action in favor of students when specific requirements are met].)[5]

Moreover, John's reliance on the order denying Jane's motion to vacate as proof that Jane's interests are not injuriously affected affords an independent ground for denying his motion to dismiss the appeal. As a general rule, when the "disposition of a motion to dismiss requires a consideration of the appeal upon its merits, the motion must be denied." (*Estate of Wunderle* (1947) 30 Cal.2d 274, 279.) John acknowledges this rule but contends that an exception permitting dismissal applies here because Jane's appeal is "clearly frivolous." The exception John attempts to invoke applies when "an examination of the judgment roll demonstrates that the appeal is frivolous." (*Wunderle*, at p. 279.) It does not apply when, as here, the motion to dismiss is based on the same ground that the respondent relies on to argue for an affirmance of the order (*ibid.*), and, in any event, we find nothing frivolous about this appeal.

---

[5] "A student may bring a Title IX claim against a school for sexual harassment by another student where the harassment 'is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit,' and 'the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities.' [Citations.] Sexual assault 'qualifies as being severe, pervasive, and objectively offensive sexual harassment that could deprive [plaintiff] of access to the educational opportunities provided by her school.' " (*Doe v. University of Southern California, supra*, 29 Cal.App.5th at p. 1215, fn. 2.)

## B.  The Exhaustion Requirement Does Not Apply

John argues that even if Jane has standing, her appeal should be dismissed because she failed to exhaust her administrative remedies.  John reasons that after Jane was notified about the mandate order, she was offered the opportunity to participate in a rehearing of her Title IX complaint, but instead of pursuing that available remedy "she opted to forego the administrative process" and file a motion to vacate the mandate order.  Therefore, "judicial intervention is premature" and the appeal should be dismissed for failure to exhaust administrative remedies, John posits.

John's argument misses the mark because there is no administrative remedy for the relief Jane seeks:  a right to participate in any mandate proceeding that could overturn the disciplinary decision issued in response to her complaint of sexual assault.  Under the exhaustion doctrine, "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.)  The doctrine applies to actions seeking both ordinary and administrative mandamus (*Leff v. City of Monterey Park* (1990) 218 Cal.App.3d 674, 680–681), but it does not apply here, where the court's action in granting the writ of mandate is itself the subject of the appeal.

We deny John's motion to dismiss the appeal and turn now to the merits of Jane's claim.

## III.  The Mandate Order is Not Void

Jane argues that the mandate order is void because the failure to provide her with notice of John's writ petition deprived the trial court of jurisdiction to issue a writ of mandate overturning the University's disciplinary decision.  The determination whether an order is void is a

question of law, which we review de novo. (*Airs Aromatics, LLC v. CBL Data Recover Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018; *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961; *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.) As we will explain, the trial court had fundamental jurisdiction to issue the mandate order, and Jane's arguments to the contrary do not withstand scrutiny.

## A. The Court Had Fundamental Jurisdiction

"A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties." (*Carlson, supra,* 54 Cal.App.4th at p. 691.) " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*American Contractors, supra,* 33 Cal.4th at p. 660.)

Here, the trial court had authority over the subject matter of this action. The University is a statewide administrative agency and public legal entity. (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1487.) Judicial review of its decisions may be obtained by a proceeding for a writ of ordinary or administrative mandate. (*McGill v. Regents of University of California, supra,* 44 Cal.App.4th at p. 1785; *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.)

The trial court also had personal jurisdiction over the University. " ' "Service of process is the means by which a court having jurisdiction over the subject matter asserts its jurisdiction over the party and brings home to him reasonable notice of the action." ' " (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125,

15

139.)  The University was served with John's writ petition and appeared in court to defend its decision to discipline John.  Because the court had personal jurisdiction over the University as well as subject matter jurisdiction, the court had "jurisdiction in its most fundamental . . . sense," and its mandate order against the University is not void under the familiar rule of *American Contractors*, *supra*, 33 Cal.4th at page 660.

Jane contends the mandate order is void because *she* was denied notice of John's petition and the opportunity to participate in the writ proceeding.  To the extent her authority addresses the due process and statutory rights of parties, it falls comfortably within the rule of *American Contractors* and is inapposite because Jane does not establish—or even contend—that she was a party to John's writ proceeding before she filed her motion to vacate the mandate order.

The constitutional right to "due process requires that *a party* be given notice and an opportunity to defend his [or her] interests."  (*Antelope Valley Groundwater Cases* (2021) 62 Cal.App.5th 992, 1057, italics added; see also *Brown v. Williams* (2000) 78 Cal.App.4th 182, 186, fn. 4; *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239.)  For example, "if a defendant is not validly served with a summons and complaint, the court lacks personal jurisdiction and a default judgment in such action is subject to being set aside as void."  (*Lee v. An* (2008) 168 Cal.App.4th 558, 564; see also *Caldwell v. Coppola* (1990) 219 Cal.App.3d 859, 863.)  The notice requirements of due process apply to plaintiffs as well as to defendants.  (*Reid v. Balter* (1993) 14 Cal.App.4th 1186, 1194 [order of dismissal void when plaintiffs did not receive notice that case would be dismissed if they failed to appear at status conference].)

16

Similar rights are protected by statute. In a writ of mandate proceeding, the parties are named in the petition, which serves as the complaint. (*Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1296–1297 (*Tracy Press*); *Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 859 (*Tabarrejo*).) Under section 1107, an application for the issuance of a prerogative writ "shall" be served on "the respondent and the real party in interest *named in such application*." (Italics added.) And under section 1088, a peremptory writ may "issue[] in the first instance" only upon notice; a copy of the mandate petition "must be served on each person *against whom the writ is sought*." (Italics added.)

None of this authority aids Jane, however, as the University is the only respondent or real party in interest named in John's petition, and the only party against whom John sought writ relief. Jane is described as a nonparty to the writ proceeding, and as a result the "general and familiar concepts of due process" she invokes and the language of the cited writ statutes do not establish that the mandate order is void.

## B. Real Parties in Interest and Necessary and Indispensable Parties

Jane contends that she had a right to receive notice and participate in the writ proceeding because she was a real party in interest and, as such, a necessary and indispensable party. According to this argument, John's failure to name Jane as a real party in interest was error, and this alleged error deprived the court of jurisdiction to issue the mandate order.

### 1. Whether Jane Is a Real Party in Interest Is Not Dispositive

The concept of a real party in interest is not susceptible to a single meaning or fixed consequence. Generally, the term refers to a person or entity that has an actual and substantial interest that is directly affected by a proceeding. (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173

17

Cal.App.4th 1024, 1031–1032.) Thus, a real party in interest is a "person who possesses the right to sue under the substantive law." (*City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 504; see § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"].) In writ proceedings, the real party in interest can be " 'the other party' " in a lawsuit or proceeding involving the petitioner, or the " 'real adverse party' " in whose favor the act complained of by the petitioner was done. (*Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173 (*Sonoma County NFZ*); see also *Tabarrejo, supra,* 232 Cal.App.4th at p. 859.)

Jane contends that she was a real party in interest in John's court case because the mandate order directly affects her interests as the alleged victim of John's sexual assault. Jane reasons that the policies and procedures the University adopted in order to comply with Title IX and related federal regulations are designed to protect her, and those protections were directly implicated by John's writ petition, which sought to overturn the University's decision to sanction him for assaulting Jane.[6]

Jane is persuasive that her actual and substantial interests were directly affected by John's writ case. She was, after all, the complaining witness in the disciplinary proceeding that resulted in John's suspension from the University, which John successfully petitioned the trial court to set aside. Jane might fairly be described as the " 'real adverse party' " in whose favor the University's disciplinary decision was entered. (See *Sonoma County NFZ, supra,* 189 Cal.App.3d at p. 173.) But the trial court made no

---

[6] Jane's appeal is supported on this point by amici curiae briefs filed on behalf of the following organizations: California Women's Law Center; Know Your IX; and Family Violence Law Center.

finding as to whether Jane was a real party in interest, concluding that issue is not dispositive. We agree.

Whether Jane could have been named a real party in interest is not dispositive because John chose not to identify her as such in his writ petition. "Failing to name an individual as a real party in interest in the pleading that initiates the action is not a defect. It does not render the pleading defective; it merely defines the parties, leaving out the individual not named." (*Tracy Press*, *supra*, 164 Cal.App.4th at p. 1296.) Because Jane was not named as a party and duly served with notice of the action, the court did not obtain jurisdiction to enter an order against her. (*Ibid*.) But, as the trial court explained, the mandate order was not entered against Jane. It did not require her to take any action or prevent her from taking any action; it simply directed the University to set aside its disciplinary decision against John and proceed from there.

Jane insists controlling case law establishes that failure to name a real party in interest in a writ proceeding is a jurisdictional defect, which voids any mandate order the petitioner has obtained. To support this claim, Jane cites *Palma*, *supra*, 36 Cal.3d 171 and *Sonoma County NFZ*, *supra*, 189 Cal.App.3d 167, but to no avail.

*Palma* addresses the proper procedure for a court to issue a peremptory writ of mandate in the first instance, i.e., without first issuing an alternative writ. (*Palma*, *supra*, 36 Cal.3d at p. 175.) Petitioners in *Palma* were defendants in a personal injury action whose motion for summary judgment had been denied. They filed a petition for writ of mandate in the court of appeal requesting issuance of an alternative writ and, upon return, a preemptory writ commanding the superior court to set aside the summary judgment order. (*Id*. at p. 177.) Instead, the court of appeal issued a

19

peremptory writ in the first instance, directing the superior court to grant the defendants' motion for summary judgment. (*Ibid*.) This was reversible error, the *Palma* court found, because a court's authority to issue a peremptory writ in the first instance is limited by section 1088 to cases in which opposing parties have received proper notice. (*Id*. at p. 178.) The opposing parties in *Palma* were not provided such notice because neither the petitioner nor the court of appeal notified them that issuance of a peremptory writ in the first instance was being sought or considered. (*Id*. at p. 180.)

Jane contends that, under *Palma*, a mandate petition must name all real parties in interest and provide them with notice of the writ proceeding. She reasons that this requirement is implicit in a statement in *Palma* that section 1088's notice provision applies to "the parties adversely affected by the writ." (*Palma*, *supra*, 36 Cal.3d at p. 180.) We are not persuaded by this reasoning. The *Palma* court did not hold or even consider whether a person who is not named in a writ petition as a respondent or real party in interest has a right to notice of the proceeding under section 1088. Nor did it address whether the failure to name a real party in interest deprives the court of fundamental jurisdiction to adjudicate a writ petition. "It is well settled that language contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered." ' " (*People v. Banks* (1993) 6 Cal.4th 926, 945.) This principle applies with special force here, where the *Palma* court was applying a statute that, by its terms, requires notice only to those "against whom the writ is sought" (§ 1088), in a case in which the entity denied notice was a named party in the proceeding.

*Sonoma County NFZ*, which is closer to our case, addresses whether a writ can be challenged because of its impact on an absent real party in

20

interest.  (*Sonoma County NFZ*, *supra*, 189 Cal.App.3d 167.)  The case involved a dispute about the process for filing ballot arguments for a voter initiative to declare Sonoma County a nuclear-free zone.  A group that opposed the measure (opponents) filed a petition in the superior court seeking a writ of mandate directing the county clerk to accept and publish ballot arguments that they submitted after the statutory deadline.  (*Id.* at pp. 170 & 172.)  The opponents named the clerk in their petition, but not the group that supported the initiative, which included its individual sponsors (proponents).  (*Id.* at p. 172.)  The superior court issued the writ of mandate, and after the proponents received notice of it, they filed a petition in the court of appeal seeking their own writ of mandate to compel the superior court to set aside the earlier writ of mandate.  (*Id.* at pp. 170 & 173.)

The *Sonoma County NFZ* court concluded that the superior court's writ of mandate was issued in error.  (*Sonoma County NFZ*, *supra*, 189 Cal.App.3d at p. 171.)  Pertinent here, the appellate court agreed with the proponents that they were real parties in interest in the opponents' writ proceeding, and that the superior court did not have authority to issue a peremptory writ without affording them notice of the proceeding.  (*Id.* at p. 173.)  The court found first that a mandate petition "must name the real party in interest, who thereafter has a right to notice and to be heard before a trial or appellate court issues a peremptory writ."  (*Ibid.*)  Then the court declared it would be "difficult" to conclude the proponents were not the real party in interest under the facts presented.  (*Id.* at p. 174.)

Jane contends this case is analogous to *Sonoma County NFZ*, *supra*, 189 Cal.App.3d 167, but we disagree.  The proponents in *Sonoma County NFZ* had a "clear, direct interest" in litigating the question whether the opponents should be excused from complying with the election law (*id.* at p.

174) because the two groups were "in direct conflict on the merits of the initiative" (*id.* at p. 175).  Moreover, the relief that the opponents sought in *Sonoma County NFZ* directly harmed the proponents by forcing the county clerk to accept and publish ballot arguments attacking the proponents' initiative after they had submitted their own ballot arguments, which frustrated a statutory scheme designed to ensure simultaneous filings.  (*Id.* at pp. 170, 174.)  In other words, the superior court writ was squarely directed at the proponents—it required them to participate in a noncompliant electoral process that was demonstrably unfair to them.  By contrast here, the mandate order under review vacated a disciplinary decision arrived at by a process that was deemed unfair to John but did not limit the University's discretion about how it would proceed with reinvestigating Jane's complaint. Although Jane and John are in direct conflict as to the merits of Jane's assault complaint, Jane articulates no direct interest in John's claim that the University violated his right to due process.  Jane may be frustrated by the additional delay in resolving her complaint, but she does not identify any unfairness to her in the *result* the superior court reached.  (See *Doe v. Westmont College* (2019) 34 Cal.App.5th 622, 640 [compelling university to comply with due process principles benefits the accused student, alleged victim and the college]; *Doe v. Regents of University of California* (2018) 28 Cal.App.5th 44, 46 ["When the accused does not receive a fair hearing, neither does the accuser"].)

Nor do we accept Jane's contention that *Sonoma County NFZ* stands for the proposition that a mandate order is *void* if issued pursuant to a petition that did not name a real party in interest.  Unlike Jane, the proponents in *Sonoma County NFZ* challenged the superior court's authority to issue a writ in that case by filing their own mandate proceeding in the

court of appeal, rather than by moving to vacate the first mandate order as void. (*Sonoma County NFZ, supra,* 189 Cal.App.3d at p. 173.) Further, the proponents in *Sonoma County NFZ* were not only a real party in interest, they were a party against whom relief was granted, in that they were required to participate in an unfair electoral process. Finally, and in any event, the court of appeal denied the proponents' request for a peremptory writ because the election had occurred before the case was decided. (*Id.* at pp. 172 & 174.) Thus, although the court of appeal opined that the superior court writ was issued in error, it did not invalidate the lower court's order on any ground.

In sum, neither *Palma* nor *Sonoma County NFZ* is precedent for declaring a mandate order void for failing to join a real party in interest. Jane's remaining arguments in support of her claim are based on a different body of law, to which we now turn.

### 2. Jane Fails To Show She Was An Indispensable Party

Jane contends that the mandate order is void because she was an indispensable party to the writ proceeding, such that excluding her from the proceeding deprived the court of jurisdiction. We conclude that even if Jane may have been a necessary party, she has not established she was indispensable to adjudication of this writ petition or that excluding her from the writ proceeding was a jurisdictional error.

Section 389, subdivision (a) provides that a person who may be properly joined as a party in an action "shall" be so joined in certain circumstances: "if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii)

23

leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (§ 389, subd. (a).) "A person meeting these requirements is often referred to as a 'necessary party.' " (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 296 (*American Indian Model Schools*).) If a person who qualifies as a necessary party "cannot be made a party" to the action, the court must determine under subdivision (b) whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable." (§ 389, subd. (b).)

Determining whether a nonparty " ' "is necessary and/or indispensable is a matter of trial court discretion in which the court weighs 'factors of practical realities and other considerations.' " [Citation.] "A court has the power to proceed with a case even if indispensable parties are not joined. Courts must be careful to avoid converting a discretionary power or rule of fairness into an arbitrary and burdensome requirement that may thwart rather than further justice." ' " (*American Indian Model Schools*, *supra*, 227 Cal.App.4th at p. 296; *City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 84.) If the trial court commits a prejudicial abuse of discretion in deciding a case in the absence of an indispensable party, the judgment is properly reversed on appeal. (See e.g. *Morrical v. Rogers* (2013) 220 Cal.App.4th 438 (*Morrical*).)

In the present case, the trial court rejected Jane's contention that she was an indispensable party under the circumstances presented here. With the benefit of having already ruled on the mandate petition, the court concluded that Jane's absence from the proceeding did not preclude the court

from affording complete relief to the parties before it; nor did it impair Jane's ability to pursue her allegation that John assaulted her. The court did not need to exercise jurisdiction over Jane in order to adjudicate a writ petition that sought relief solely from the University on the basis that its disciplinary procedures fell short of due process standards.

Jane contends the trial court abused its discretion by concluding she was not an indispensable party because she had a right to defend the favorable administrative decision that she obtained from the University, and that right was destroyed by her exclusion from John's writ proceeding. Under these circumstances, Jane posits, the trial court had no power to issue the writ. As support for this argument, Jane relies primarily on two cases: *Pinto Lake MHP LLC v. County of Santa Cruz* (2020) 56 Cal.App.5th 1006 (*Pinto Lake*); and *Morrical, supra*, 220 Cal.App.4th 438.

In *Pinto Lake*, a county rent board denied a mobilehome park owner's application for a special rent adjustment after holding a hearing where the application was vigorously opposed by park residents and their counsel. (*Pinto Lake, supra*, 56 Cal.App.5th at p. 1011.) The park owner challenged the decision by filing a petition for administrative mandamus and complaint for declaratory relief against the county. (*Ibid*.) The trial court sustained the county's demurrer on the ground that the park owner failed to join park residents as defendants in the case. However, the resulting judgment dismissing the park owner's action was reversed on appeal. (*Id*. at p. 1020.)

The *Pinto Lake* court found no abuse of discretion in the trial court's ruling that the park residents were necessary parties, where the record showed that they participated as respondents in the county's administrative proceeding and that judicial review of the county's decision in their absence would "impede their ability to protect the interests that they successfully

25

advanced in the administrative proceeding." (*Pinto Lake*, *supra*, 56 Cal.App.5th at p. 1015.) But the trial court erred by dismissing the lawsuit without deciding whether the residents were also indispensable parties. (*Id.* at p. 1011.) Because of the discretionary and equitable nature of the indispensable party inquiry, the *Pinto Lake* court remanded the case for the trial court to determine whether to dismiss the case because the residents were indispensable parties, or to proceed in the residents' absence because they were not. (*Ibid.*)

*Pinto Lake* may provide some support for Jane's contention that she has a cognizable interest in defending the determination that the University rendered in her favor. In affirming the finding that the park residents were necessary parties in the park owner's court proceedings, the *Pinto Lake* court found that the residents had an "interest in the finality of the hearing officer's decision," which "necessarily include[d] an interest in preventing *any* remand." (*Pinto Lake*, *supra*, 56 Cal.App.5th at p. 1016, italics in original.) Although there are differences between Jane's role in the University's case against John and the role of the park residents in the county's formal adversarial proceeding (see *id.* at p. 1015), there is also this point of commonality: Jane, too, has an interest in the finality of the administrative decision. But whether Jane, like the park residents, is a necessary party is not the dispositive question.

*Pinto Lake* does not support Jane's claim that she was an indispensable party. To the contrary, *Pinto Lake* illustrates that a necessary party might not be an indispensable party, and both inquiries are matters of trial court discretion. (See, e.g., *Pinto Lake*, *supra*, 56 Cal.App.5th at pp. 1013–1014 [discussing § 389, subd. (b)].) The fact that the trial court in *Pinto Lake* did not abuse its discretion by finding that the park residents were necessary

26

parties does not mean that the trial court in this case abused its discretion by concluding that Jane is not an indispensable party, which is a different inquiry. *Pinto Lake* does not address whether park residents were indispensable parties because the trial court failed to conduct that inquiry, unlike the trial court in this case. Here, the dispositive issue in John's writ proceeding was whether his due process rights were violated, and the trial court concluded that it was able to resolve that issue without making any ruling about the validity of Jane's complaint against John. By contrast, in *Pinto Lake* the park owner's prayer for relief included a request that the county be ordered to grant its application for a rent increase, reversing on the merits the application the park residents had opposed. (*Pinto Lake*, *supra*, 56 Cal.App.5th at p. 1016.)

Jane argues that John sought analogous relief because he challenged the sufficiency of the evidence supporting the University's findings against him. It is true that after concluding that the University's process was unconstitutional, the trial court went on to make a conditional finding that "[i]f the process had provided adequate due process, then the Investigator's findings of fact would have been supported by substantial evidence." But the University did not appeal the judgment against it, nor does Jane take issue with the substance of the trial court's conclusion that the University's process violated John's constitutional rights, so this conditional finding is of no moment. Instead of deciding the merits of the University's decision to discipline John, the trial court was careful to ensure its judgment not interfere with the University's "discretion . . . regarding further proceedings." And the court made these rulings before Jane filed her motion to vacate, so they informed the court's discretionary decision that Jane was not an indispensable party.

Jane also relies on *Morrical*, which involved a dispute among three siblings regarding management of a group of family-owned companies. (*Morrical*, *supra*, 220 Cal.App.4th 438.) Sibling Ann filed an action under section 709 of the Corporations Code challenging the validity of a shareholder election that gave control of the companies to Altamont, a private equity firm with connections to Ann's brothers. (*Id.* at pp. 448–449.) Ann alleged that her brothers' votes were invalid and disqualified because their financial dealings with Altamont constituted a conflict of interest and breach of fiduciary duty. Altamont moved for judgment on the pleadings on the ground that Ann failed to name her brothers as defendants in the action. (*Id.* at pp. 449 & 461.) The trial court denied the motion without explanation, then found that the election was invalid and entered judgment in favor of Ann. Altamont successfully appealed. (*Ibid.*)

The *Morrical* court found that Ann's brothers were indispensable parties whose joinder in the action was required. (*Morrical*, *supra*, 220 Cal.App.4th at p. 460.) Because Ann's claim for relief against Altamont was premised on her brothers' alleged self-dealing and breach of fiduciary duty, the brothers' rights were "necessarily" affected by the judgment notwithstanding the fact that the lower court did not directly set aside the brothers' agreements or dealings with Altamont. (*Id.* at p. 463.) Furthermore, the brothers were indispensable parties because excluding them impaired their ability to protect their interests and also subjected Altamont to a substantial risk of incurring inconsistent obligations by reason of the brothers' claimed interests, the appellate court found. (*Ibid.*)

*Morrical* does not support Jane's contention that she was an indispensable party in John's writ case. John's claim against the University was not premised on allegations that would have required the court to make

28

any findings about Jane, either expressly or implicitly. Nor did the mandate order subject the University to a substantial risk of incurring inconsistent obligations to John and Jane, since the court was careful not to dictate how the University should proceed with Jane's complaint after setting aside the original disciplinary decision.

Jane contends that she is an indispensable party under the reasoning of *Morrical* because, although the mandate order was ostensibly directed at the University, as a practical matter, it impaired her rights. According to this argument, the mandate order impairs Jane's rights by setting aside a decision she obtained from the University. This argument confuses Jane's interests with her rights. Jane has an interest in the finality of the University's decision to discipline John, but she fails to establish that she has a cognizable right to preserve a finding and sanction that were rendered in a proceeding that violated John's constitutional rights. The mandate order does not overturn the University's decision because of anything that Jane did. It does not dictate how the University should handle Jane's complaint going forward. And Jane identifies no risk of inconsistent judgments in this case. These factual circumstances distinguish *Morrical* in ways that support the trial court's determination that Jane was not an indispensable party.

*Morrical* also fails to support Jane's legal argument that a court order issued in the absence of an indispensable party is void. *Morrical* was a direct appeal by a named defendant, Altamont, that made a trial court motion for judgment on the pleadings due to the failure to join indispensable parties. (*Morrical*, *supra*, 220 Cal.App.4th at pp. 449 & 461.) When that motion was summarily denied, the appellate court reviewed the ruling under an abuse-of-discretion standard. (*Id*. at p. 461.) And in concluding that the trial court had abused its discretion, *Morrical* emphasized that evidence of prejudice to

29

the unjoined person was " 'of critical importance.' " (*Id*. at p. 463.) *Morrical* did not hold or intimate that the failure to join an indispensable party deprived the court of jurisdiction to decide a case. We turn, finally, to cases that address that point explicitly.

### 3. Failure to Join an Indispensable Party Is Not a Jurisdictional Defect

Jane's collateral attack of the final judgment in John's writ case is premised on proving that the judgment is void for lack of jurisdiction. Even if Jane could establish that she was an indispensable party in the writ case, that would not mean that the mandate order is void. Contrary to Jane's appellate arguments, the "failure to join 'indispensable' parties does not deprive a court of the power to make a legally binding adjudication between the parties properly before it." (*Weir v. Ferreira* (1997) 59 Cal.App.4th 1509, 1519.) To be sure, " ' [a]n indispensable party is not bound by a judgment in an action in which he was not joined.' " (*Save our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 693.) But failing to join an indispensable party " ' "is not 'a jurisdictional defect' in the fundamental sense." ' " (*Tracy Press*, *supra*, 164 Cal.App.4th at pp. 1298–1299; see *Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364 (*Kraus*).)

Jane relies on *Tracy Press*, *supra*, 164 Cal.App.4th 1290, a case that reinforces many of our conclusions. The case arose out of a disputed public records request for correspondence between a city council member named Tucker and the Lawrence Livermore National Laboratory. The newspaper that sought these records filed a writ petition in the superior court to compel the city and Tucker to produce emails from Tucker's private account, which was denied. The newspaper challenged the ruling by filing a petition for writ of mandate in the appellate court, which named the superior court as respondent and the city as the only real party in interest. (*Id*. at p. 1294–

1295.) The *Tracy Press* court dismissed the petition because Tucker was not a party in the proceeding *and* she was indispensable. (*Id*. at p. 1295.) Tucker was not a party, the court found, because she was not designated as a party in the newspaper's writ petition. This fact was not a "defect," but because Tucker was a stranger to the action, the court did not have jurisdiction over her and could not issue an order "requiring [her] to act." (*Id*. at p. 1297.) Yet it was Tucker's emails, residing on her personal computer, to which the newspaper sought access. (*Id*. at pp. 1294 & 1299.) The court concluded it had to dismiss the writ petition because Tucker was an indispensable party under those circumstances; there was no way to afford effective relief in her absence. (*Id*. at p. 1301.)

*Tracy Press* does not assist Jane. The case follows settled authority in holding that the decision whether to dismiss an action for failure to name an indispensable party is a matter of judicial discretion, which may turn on many factors. (*Tracy Press*, *supra*, 164 Cal.App.4th at pp. 1298 & 1299.) In *Tracy Press*, Tucker was an indispensable party because the newspaper sought to compel her to act and there was no effective order that could be made in her absence. (*Id*. at pp. 1299–1302.) As in *Tracy Press*, in this case Jane's absence from the proceeding meant that the court could not issue an order requiring her to act, which the trial court acknowledged in its September 2020 order. But unlike in *Tracy Press*, Jane was not indispensable because the mandate order is directed at the University and does not require Jane to take any action or to refrain from acting.

*Tracy Press* also affirms the legal point that is independently fatal to Jane's claim: failing to join an indispensable party " ' "is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties

31

before it which will stand.  It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined." ' " (*Tracy Press*, *supra*, 164 Cal.App.4th at pp. 1298–1299.) Thus, even if Jane could establish error in the failure to designate her an indispensable party, this would not establish that the mandate order is void. The trial court in this case still had " ' "the power to render a decision as to the parties before it." ' " (*Id.* at p. 1298.)  And that decision " ' "will stand." ' " (*Ibid*.)

In her reply brief, Jane contends that many cases characterize the failure to name an indispensable party as a jurisdictional defect that bars the court from proceeding to judgment, but the cases Jane cites were decided under a former version of section 389.  (See *Bank of California v. Superior Court* (1940) 16 Cal.2d 516, 519; *Piedmont Publishing Co. v. Rogers* (1961) 193 Cal.App.2d 171, 180.)  " 'Since the 1971 revision of . . . section 389, failure to join "indispensable" parties does not deprive a court of the power to make a legally binding adjudication between the parties properly before it.' " (*Golden Rain Foundation v. Franz* (2008) 163 Cal.App.4th 1141, 1155; see also *Kraus*, *supra*, 73 Cal.App.3d at p. 364.)

This appeal, like Jane's motion to vacate, is predicated on Jane's contention that the mandate order is void.  Jane makes a plausible argument that she had an interest in preserving the University's disciplinary decision against John, but that argument does not prove that the mandate order is void under any theory she offers.  The record before us shows that the trial court had the power to make a legally binding adjudication between the parties that were properly before it in the writ proceeding—John and the

University.  Under these circumstances, we reject Jane's contention that the order granting the writ of mandate is void.

## DISPOSITION

The September 2020 order denying Jane Roe's motion to vacate the order granting John Doe's petition for writ of mandate is affirmed.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Roe v. Doe* (A161546)

Trial Court:       Alameda County Superior Court

Trial Judge:       Hon. James Reilly

Counsel:           Steptoe & Johnson, Robyn C. Crowther, Melanie A. Ayerh;
                   Public Counsel Law Center, Kathryn A. Eidmann,
                   Amanda Savage, Tara Ford, Noreen A. Farrell; Equal
                   Rights Advocates, Brenda Star Adams and Maha
                   Ibrahim for Appellant

                   Family Violence Law Center, Erin Scott, Stephanie Penrod;
                   and L.L. Dunn Law Firm, Laura L. Dunn for Amici
                   Curiae on behalf of Appellant

                   California Women's Law Center, Chelsea Mutual, Elise
                   Brumbach for Amici Curiae on behalf of Appellant

                   Hathaway Parker, Mark M. Hathaway, and Jenna E.
                   Parker for Plaintiff and Respondent

                   Munger, Tolles & Olson, Hailyn J. Chen, and Teresa
                   Alexandra Reed Dippo for Defendant and Respondent

*Roe v. Doe* (A161546)

34